Robert SEIFFER et al., Plaintiffs,

v.

TOPSY'S INTERNATIONAL, INC., et al., Defendants.

BEAR, STEARNS & CO. et al., Defendants and Third-Party Plaintiffs,

v.

TOUCHE ROSS & CO. et al., Third-Party Defendants.

G. WALKER & COMPANY, Defendant and Third-Party Plaintiff,

v.

G. Kenneth BAUM et al., Third-Party Defendants.

BEAR, STEARNS & CO. et al., Defendants and Third-Party Plaintiffs,

v.

Jerome F. TEGELER et al., Third-Party Defendants.

BEAR, STEARNS & CO. et al., Defendants and Third-Party Plaintiffs,

v.

BRYAN, CAVE, McPHEETERS & McROBERTS, et al., Third-Party Defendants.

TOPSY'S INTERNATIONAL, INC., et al., Defendants and Third-Party Plaintiffs,

v.

BRYAN, CAVE, McPHEETERS & McROBERTS, et al., Third-Party Defendants.

Civ. A. No. KC–3435.

United States District Court, D. Kansas.

March 5, 1976.

Barton P. Cohen, Cohen & Cohen, Overland Park, Kan., Robert C. Gordon, Rich, Granoff & Gordon, Thomas W. Van Dyke, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Sheridan Morgan, Donald H. Loudon, Kansas City, Mo., for all plaintiffs.

Charles S. Schnider, Schnider, Shamberg & May, Shawnee Mission, Kan., Harry P. Thomson, Jr., William B. Prugh, Dennis Palmer, and Robert R. Raymond, Shughart, Thomson & Kilroy, Kansas City, Mo., for defendants Topsy's International, Inc., Jerry D. Berger, James T. House and Harry Nuell.

Martin J. Purcell, John R. Gibson and John R. Bancroft, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, Mo., Willard L. Phillips and John J. Jurcyk, Jr., McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendants Bear, Stearns & Co., William Blair & Co., H. O. Peet & Co., Inc., First of Michigan Corp., Johnson, Lane, Space, Smith & Co., Inc., Stephens, Inc., Stifel Nicolaus & Co., Inc., B. C. Christopher & Co., Piper, Jaffray & Hopwood, Inc. (successor to Ebin, Robertson & Co., Inc.), Hallowell, Sulzberger, Jenks & Co., J. N. Russell, Inc., Hugh Johnson & Co., Inc., Mark Henry & Co., Zuckerman, Smith & Co., Kohlmeyer & Co., Scherck, Stein & Franc, Inc., Norris & Hirshberg, Inc.

Martin M. Green, Anderson, Green, Fortus & Lander, Clayton, Mo., for defendant I. M. Simon & Co.

Elsie K. DeVan, Corporate Secretary, for defendant Disbro & Co.

William H. Sanders and Edward Matheny, Jr., Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., Leonard O. Thomas, Weeks, Thomas, Lysaught, Bingham & Johnston, Kansas City, Kan., for defendant G. H. Walker & Co.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., N. Jack Brown, Boddington, Brown & Unverferth, Kansas City, Kan., for defendant Marvin L. Tucker, Adm. of the Estate of N. J. Sharlip, deceased, Ralph J. Tucker, George H. Charno, Jr., Sidney L. Willens, James P. Jouras and Marvin L. Tucker, d/b/a Tucker, Charno, Willens, Jouras & Tucker, a professional corporation.

William G. Levi and George M. Winger, Smith, Schwegler, Swartzman & Winger, Kansas City, Mo., Robert P. Anderson and Keith Martin, Payne & Jones, Olathe, Kan., Francis J. Higgins, Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., for defendant John D. Crouch, Thomas H. Devine, Jerry B. Jackson, Loren G. Hoffman, Carl Lipoff, Mary J. McCann, Rodney T. Minkin, Robert J. Petsche, Ben Ruben, and others, d/b/a Touche Ross & Co.

Frank Cicero, Jr. and Tefft W. Smith, Kirkland & Ellis, Chicago, Ill., Blake A. Williamson and Donald A. Hardy, Williamson, Cubbison & Hardy, Kansas City, Kan.,

for third party defendant G. Kenneth Baum.

David R. Hardy, Gene E. Voights, and Leo P. Dreyer, Shook, Hardy & Bacon, Kansas City, Mo., George A. Lowe, Olathe, Kan., for third party defendants Robert H. McRoberts, Thomas S. McPheeters, Jr., William H. Charles, Arthur B. Shepley, Jr., Marion S. Francis, William C. Connett IV, Thomas V. Connelly, Veryl L. Riddle, Robert G. Brady, George S. Hecker, Robert H. McRoberts, Jr., William D. Crampton, Robert L. Sweney, John J. Goebel, William M. Van Cleave, Edwin S. Taylor, Jerome M. Rubenstein, Joseph F. Mueller, George V. Meisel, I. Jack Lerner, Harold G. Blatt, C. Perry Bascom, Paul P. Weil, Thomas C. Walsh, and Frederick W. Scherrer, d/b/a Bryan, Cave, McPheeters & McRoberts.

J. Willard Haynes, Kansas City, Kan., and John Calvert, Kansas City, Mo., for third party defendant Dempsey-Tegeler & Co., Inc.

Joseph J. Kelly, Jr., Spencer, Fane, Britt & Browne, Kansas City, Mo., and Ernest N. Yarnevich, Kansas City, Kan., for third party defendants Jerome F. Tegeler, John C. Hecht, Lewis J. Whitney, and Albert F. Gummersbach.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This is a class action brought under § 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] and pursuant to § 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b–5 promulgated thereunder [17 C.F.R. § 240.10b–5]. We previously certified the case as a class action as to the federal claims only, and held that the state law claims were to proceed individually. See 64 F.R.D. 714 (D.C.Kan. 1974). Appeals from this order were taken and denied by the Tenth Circuit Court of Appeals on July 28, 1975. [*Seiffer v. Topsy's International, Inc.*, 520 F.2d 795 (10th Cir. 1975).] A petition for writ of certiorari was denied on January 12, 1976.

On October 6, 1975, the plaintiffs and the defendants Topsy's International, Inc. (Topsy's), Berger, House, and Nuell filed a joint motion for an order of the court providing for notice, hearing and approval of a proposed settlement of the claims of the class and the named plaintiffs against those defendants only. A copy of the proposed settlement agreement was attached to the motion. Thereafter, plaintiffs and several of the defendant underwriters filed a motion requesting an order of the court approving a proposed settlement between the plaintiffs and the class and the defendant underwriters. A copy of the proposed settlement agreement and copies of the covenant-not-to-sue agreements were attached to the latter motion. On November 10, 1975, the court entered its order regarding notice to the class of the proposed settlements. The notice itself was dated November 25, 1975.

The notice described the status of the litigation, defined the class, set forth the proposed pending settlements, and delineated a procedure for class members to file claims or request exclusion from the class and thus exclusion from participation in the pending settlements. The notice additionally outlined a procedure for rejection of the claims and the steps to be complied with by a claimant whose claim was rejected or otherwise objected to. The court further directed via the notice that a complete description of the action, including the detailed terms of the settlement agreements, could be found in the underlying documents on file with the clerk of this court.

The November 10th order set February 17, 1976 as the hearing date at which any class member could appear and show cause why the proposed settlements and applications for attorneys' fees and expenses should not be approved. The original deadline for filing claims or exclusions was extended at a pretrial conference held February 4th to allow late claims or exclusion requests to be filed on or before February 17th, the date set for the hearing.[1]

---

1. The date for filing claims or exclusion requests was extended because of delay in mailing of the notice and accompanying material by several out-of-state brokerage firms. This de-

The hearing on the settlements and attorneys' fees and expenses was held as scheduled, and these matters are now before the court for consideration.

We first address the issue of the adequacy of notice to the class members since this is a class action brought pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, requiring that the notice given be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Rules 23(e) and 23(c)(2) of the Federal Rules of Civil Procedure, and *Eisen v. Carlisle & Jacquelin et al.,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

The evidence in the record from which adequacy of notice may be evaluated is twofold: (1) the January 6, 1976 affidavit filed by co-lead counsel for the class, Mr. Tom Van Dyke and Mr. Robert C. Gordon, and exhibits attached thereto, and (2) the exhibits introduced into evidence at the February 17th hearing. The affidavit reveals that an extensive individual mailing of notice was achieved. Names and addresses of potential claimants were obtained from (a) Topsy's, its transfer agent and from company records (Exhibit "A"); from (b) the defendant underwriters (Exhibit "B"); and from (c) letters and other inquiries sent by claimants who responded to the notice published in several newspapers, which included the Wall Street Journal (Exhibits "C" and "D"). Exhibits "C–2" and "D–1" further disclose intensive follow-up effort on the part of class counsel to insure that class members received individual notice. The documentation contained in the exhibits attached to the affidavit demonstrates a massive and intensive campaign

to comply with the Rule 23 and *Eisen* notice requirements. In our view, both of these requirements were amply met.

In addition, evidence received at the hearing reveals publication of the notice was made in the following newspapers of general circulation and public availability: (1) the Wall Street Journal (two days); (2) the Kansas City Star and the Kansas City Times (one day each, evening and morning respectively); (3) the St. Louis Post-Dispatch (one day); and (4) the St. Louis Globe-Democrat (one day). (Plaintiffs' Exhibits 6 through 9). This publication of the notice, coupled with class counsel's diligent efforts to effect individual notice by mailing the notice to over 5,000[2] potential class members, compels the conclusion that the notice given was the best notice practicable under the circumstances and that individual notice was sent to all class members who could be identified through reasonable effort.[3] Finally, we note that no objection was raised at the hearing as to adequacy of the notice.

Since we have concluded that the notice given was the best practicable under the circumstances and was proper in all respects, we next consider the proposed settlements in light of the requirement set forth in Rule 23(e) of the Federal Rules of Civil Procedure. In evaluating the terms of the settlement agreements, we are mindful of the rule that we are not to substitute our own business judgment for that of counsel absent evidence of fraud or overreaching, which is completely absent on the record before us. *Oppenlander v. Standard Oil Company,* 64 F.R.D. 597, at 624 (D.C.Colo. 1974). Instead, we are to exercise our discretion in a reasonable manner with full

---

lay occurred solely through tardiness of these firms and in no way derived from failure of class counsel to act expeditiously. In order to avoid penalizing class members for whom receipt of the notice fell beyond the original January 19, 1976 cut-off date, we extended the cut-off date under our general equitable power over the management of the class action. Cf. *Zients v. LaMorte,* 459 F.2d 628 (2nd Cir. 1972).

2. See document # 812 in the court file, affidavit of class counsel filed January 6, 1976.

3. Mr. Van Dyke further indicated at hearing that class counsel checked various city and Polk directories in an effort to find addresses of claimants who had moved, in several cases placed long distance calls to locate class members, and checked stock transfer records, all in order to maximize individual notice.

realization that approval·of a settlement should be given if the settlement is fair, reasonable, and adequate. These terms, of course, are general, and cannot be measured scientifically. *In Re Four Seasons Securities Laws Litigation*, Opin. No. 2, M.D.L. No. 55, 58 F.R.D. 19 (W.D.Okla. 1972). We are also guided by the general principles set forth in the Manual for Complex Litigation in § 1.46. Moreover, the fact that a proposed settlement of a class action may only amount to a fraction of potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should therefore be disapproved. *City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2nd Cir. 1974). In assessing the fairness, reasonableness, and adequacy of a proposed settlement, however, we may compare the terms of the compromise with the likely rewards of litigation. *Oppenlander, supra.* The function of the court is to exercise its discretion in such a manner so as to protect the interests of parties who are parties to the action only through their representatives, the named plaintiffs. This is the underlying policy of Rule 23(e).

By the court's order of November 10, we directed that any "member of the class" could appear at the February 17 hearing and show cause why the proposed settlements and applications for fees and expenses should not be approved. This procedure for objection was further limited to those class members who filed on or before January 19, 1976 a statement of the basis for objection, together with a memorandum of supporting authorities. Only two objections were timely filed. We accordingly must review these prior to examining the settlement agreements.

■ The sole objection coming from a class member is that filed by Mr. Gene DeLeve. The grounds stated in the objection represent a diffuse attack on various aspects of the settlement and include the contention that the settlement is not fair to the defendant Topsy's. This is a clear assertion of an interest which is not logically connected to fairness of any settlement *as to the class*, which is the proper focus here. We conclude that Mr. DeLeve's objection should be and it hereby is overruled.[4]

■ Third-party defendant and cross-claimant Tucker, Charno, et al., also filed an objection to the proposed settlement between the class and Topsy's and the three defendant officers. After carefully analyzing the points raised in the notice of intention to object and in subsequent briefs, we conclude that this objection should be and it hereby is overruled.[5]

Defendant Touche, Ross also made an objection, which was received by the court on February 18, 1976, the day after the hearing and long after the January 19, 1976 date specified by the November 10 order. Out of an abundance of caution, we have reviewed the points raised therein even though the objection is unquestionably

4. At the pretrial conference, the court ruled that it would be necessary for DeLeve to file a memorandum of supporting authorities for his objection to be considered. Class counsel advised him of this ruling, and Mr. DeLeve subsequently advised the court on February 10 that he would not pursue his objections actively, nor would he file the required memorandum. The points raised are so baldly stated as to amount to mere conclusory allegations. Finally, despite this extended opportunity to brief the points raised, and despite opportunity to present evidence at the hearing, Mr. DeLeve chose not to do so. Under these circumstances, we must conclude that the objection is meritless.

5. None of the points raised by Tucker, Charno go to the fairness of the settlements vis-a-vis the interests of the class. Since Tucker, Charno is obviously not a member of the class, it also lacks any standing to even raise an objection. Contrary to its assertion, by the clear terms of the settlement agreement, Tucker, Charno is not released from any liability which may be imposed in any of the pending cross-claims and third-party actions in this litigation. Nor can master-servant principles, which are of dubious applicability here, be used to release them from any potential liability. The agreements by their terms are only effective as between the signatories, which of course excludes Tucker, Charno. For these reasons, the objection raised by Tucker, Charno, et al., is clearly without merit.

time-barred. We conclude that the objection should be and it hereby is overruled.[6]

A summary of the essential terms of the settlement agreement between the plaintiffs and the class and defendants Topsy's Berger, House, and Nuell is as follows. First, Topsy's is to pay to a party designated by the court the sum of $1,000,000.00, and the three selling officers (Berger, House, and Nuell) are to pay to a party designated by the court the sum of $225,000.00. Thus, the total amount to be contributed by these settling defendants is $1,225,000.00. When these amounts have been delivered in valid and collectible drafts, mutual releases and discharges of any claims for indemnity or contribution *as between* Topsy's and the three defendant officers are then to be effective. In short, if the agreement is approved, neither the corporation nor any of the three selling officers may claim against the other for indemnity or contribution in this litigation. In addition, the indemnity agreement[7] between Topsy's Berger, House, and Nuell dated June 26, 1973 shall no longer be effective after court approval of the settlement. Further, no provision of the settlement agreement is to be effective until court approval of the agreement is given.

Secondly, upon payment by these defendants of the amounts described, the named plaintiffs and the class agree to release and discharge defendants Topsy's, Berger, House, and Nuell from any and all claims arising out of the original complaint or any amended complaint filed in this action. Only those persons requesting exclusion from the class are excluded from the operation of this settlement agreement since it will bind the class as well as the named plaintiffs. The release, of course, by its express terms binds only the settling parties.

The funds to be deposited under the terms of the settlement agreement are to be disbursed only in accordance with the order of the court, and individual claims are to be proved in the manner designated by the court. The release and discharge of defendants Topsy's, Berger, House, and Nuell, however, is to be effective upon payment of the funds to the parties designated by the court to initially receive such funds. In addition, the defendants reserve their rights to proceed against other parties in this litigation for indemnification or contribution with respect to any of the amounts paid in settlement or for expenses paid as a result of, or arising out of this action. The release of the claims for indemnity or contribution operates only as between Topsy's and Berger, House, and Nuell. Similarly, plaintiffs and the class reserve their rights to proceed against others in this litigation, other than Topsy's, Berger, House, and Nuell. The claims brought by plaintiffs and the class against Topsy's, Berger, House, and Nuell are to be dismissed with prejudice under the agreement. Finally, no costs or expenses are to be taxed against defendants Topsy's, Berger, House, and Nuell.

To summarize, plaintiffs and the class agree to have their claims against these settling defendants dismissed with prejudice in consideration of $1,225,000.00 being paid in settlement of those claims. Other claims, whether asserted by plaintiffs and the class or by these defendants, are to remain operable and viable in this litigation and are not affected by the settlement agreement.

Counsel for the respective settling parties have each filed statements concerning the settlement agreements pursuant to the court's direction at the pretrial conference, and have each identified their respective roles in the history of the settlement negotiations.[8] At the February 17th hearing the

---

6. Touche's objection is equally without merit. Touche lacks standing since it is not a class member; and its objection was not timely filed. The rehash of the release argument is rejected for reasons stated above. The other points have been considered and are overruled.

7. See Defendants' Exhibit "A."

8. The parties were in agreement that the hearing could be considerably streamlined if evidence could be submitted in the form of written statements and thereby limit that which would be presented in testimonial form. The negoti-

court ruled that these statements would be admitted into evidence for purposes of determining the fairness, reasonableness, and adequacy of the proposed settlements as well as for showing the conduct of the settlement negotiations. The court has carefully examined the statements, together with the evidence offered both in the form of testimony and exhibits which were received at the hearing. The following is a distillation of what that evidence discloses.

First, the stage of the proceedings at which the final settlement agreement was reached was prior to any trial on the merits and after class action status was certified. The final agreement was reached only after the Tenth Circuit Court of Appeals had denied appeals of our certification order, the first of which was taken under 28 U.S.C. § 1292(b) and the second pursuant to 28 U.S.C. § 1291. These procedural developments had apparent impact on the negotiations. They undoubtedly solidified the settling parties' motivation to seriously engage in negotiation. As a practical matter, any attack on the class action facet of this case had to await review at the post-trial stage of the case. The delays and additional expenses attendant to such review served as a practical impetus to move the parties closer to reaching an agreement acceptable to both. Further, once class action status was reasonably fixed, the settling defendants were in a posture to more accurately gauge their potential exposure to damages. Liability on their part has been seriously contested since inception of the litigation, and there is nothing in the record before us to indicate that the terms of the agreement were reached on any basis other than arm's length bargaining.

Second, although plaintiffs' counsel indicate in their statement that the case against the settling defendants stands virtually ready for trial, since most of the

relevant discovery is completed, and that they further have no serious doubts about establishing the defendants' liability, we do not view this as necessarily precluding approval. While there is no direct documentary evidence submitted on behalf of the class tending to show the clear strength of their claims, portions of both plaintiffs' and the underwriters' statements go directly to this issue. Class counsel are naturally reluctant to expose their case to the full view of other parties who are still actively litigating their positions and who are in direct opposition to the stance of plaintiffs and the class.

Both the plaintiffs' and the underwriters' statements disclose that Topsy's and the selling stockholders had actual knowledge of various material misstatements and omissions contained in the registration statement and prospectuses. While this data, if admissible into evidence, would certainly enhance the strength of plaintiffs' claims and hence their likelihood of ultimate recovery, it is not totally dispositive of the fairness of the proposed settlement. There are also the inherent risks of litigation which weigh in the decision to settle rather than to litigate. The risk of ultimately recovering money damages dogs the heels of even able and zealous counsel, and this is especially true in a case of this magnitude and complexity. The certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial. Much figures in the adequacy of amount, which is intimately connected to estimating the possibility of liability and the range of possible damages. Uncertainty is one factor in this equation.

The reality confronting class counsel when the settlement accord was finally reached was that some five years had elapsed from the end of the designated class

---

ating parties were represented during negotiations by Mr. Van Dyke, and Mr. Gordon, co-lead counsel for the class, and by Mr. Thomson, counsel for Topsy's and the three defendant selling officers. Negotiations on behalf of the defendant settling underwriters were conducted by Morrison, Hecker, et al., counsel for the

underwriters. Negotiations between plaintiffs and Topsy's and the three selling officers commenced before suit was even filed (November 11, 1971) when plaintiffs' demand was refused by Mr. Thomson. The first conversation concerning settlement with the underwriters occurred April 23, 1973.

period (March 10, 1970) to the final settlement date. As a result, counsel for the class were genuinely concerned that potential claimants might have destroyed or lost their records substantiating their claims. In order to motivate class members to seek out and retrieve those records, it was thought that a sizable settlement should be announced in the notice. We are unprepared to hold that this concern was unreasonable under the circumstances.

■ Counsel for the class also state that they proceeded on the assumption the actual claims filed would most probably range between one-third and one-half ($3,000,000 to $4,500,000) of the aggregate potential claims. This assumption was further premised on the foundation fact that the incentive of a sizable settlement amount was already provided by the notice. We are highly reluctant to use the acuity of hindsight to overturn this judgment, which was reasonable at the time it was made. The fact that this estimate proved somewhat low in light of subsequent events[9] does not undercut its reasonableness. We are cautioned not to substitute our own business judgment for that of counsel. *Oppenlander, supra,* 64 F.R.D. at 624. Even assuming arguendo that the recovery here would far exceed that achieved through settlement, we regard that fact alone as insufficient in law to disapprove the agreement to settle. *City of Detroit, supra.* The amount involved here is not so grossly disproportional to the potential recovery as to require disapproval.

■ Collectibility of a judgment is also a factor bearing on the reasonableness and adequacy of a settlement when considered in relation to the defendants' ability to withstand a greater one. *City of Detroit, supra.* The facts show that class counsel seriously doubted that a large judgment could be collected from Topsy's and the selling stockholder-officers. Evidence received at the hearing corroborates this

doubt. Mr. Charles B. Crain, the present comptroller of Topsy's, testified that if the company had to pay a judgment of six million dollars, and the aggregate claims closely approximate that amount, then the company would be insolvent. Indeed, Crain also testified that the defendant Topsy's could not pay a judgment totaling three million dollars and still continue business operations. Defendants' Exhibit "B," the 1975 Annual Report of Topsy's, which Crain testified correctly reflected the company's financial status, shows total current assets of $3,632,993.00 as of August 2, 1975. Defendants' Exhibit "C," which is a letter to Topsy's stockholders dated February 12, 1976, indicates that as of January 17, 1976, the current assets totaled $3,340,231.00. Exhibit "C" shows the net worth as $3,360,150. This figure is derived from an unaudited summary of assets and liabilities.

Defendant Berger, chairman of the board of Topsy's, testified that he would be unable to pay a judgment of $6,000,000 inasmuch as his property, exclusive of property held in either his wife's or children's name, had a net worth of approximately $1,000,000. All of this evidence supports class counsels' view on the collectibility issue.

In addition, the proposed pending settlement will dispose of only a fragment of this case since plaintiffs and the class have sued others who are not participating in the agreements. These defendants include Touche, Ross, and Tucker, Charno, et al., accountants and attorneys, respectively. Whether or not these defendants will ultimately be held liable to the class must of course await decision on the merits and will depend upon what the evidence discloses. The point is, however, that potential recovery of the class is not necessarily limited to the amounts in the proposed agreement between the plaintiffs and defendants Topsy's, Berger, House, and Nuell.

■ On balance, and after fully considering the statements of counsel and oth-

---

9. 2,153 claims have been filed, and 202 exclusion requests were filed. The total amount of claims, without considering their underlying

validity since some are objected to, is $6,132,000.00.

er evidence, we conclude that the settlement agreement between plaintiffs and the class and Topsy's, Berger, House, and Nuell provides for a settlement that is fair, reasonable, and adequate under all the circumstances. The joint motion of these parties is accordingly sustained.[10]

We next consider the proposed settlement between plaintiffs and the class, and the settling underwriters. This settlement agreement was described in the notice as well as the settlement between plaintiffs and Topsy's and the selling officers. We conclude for reasons previously stated that notice to the class was adequate with respect to this agreement also. The objection filed by Touche, Ross goes to this settlement as well as to the other settlement already discussed and approved. For reasons previously stated, we conclude that Touche's objection should be and it hereby is overruled. Mr. DeLeve's objection does not attack the proposed settlement between the class and the underwriters. Tucker, Charno's objection, insofar as it may be taken to attack the instant settlement, is overruled for the reasons discussed earlier.[11] No other objections were filed, none were raised at the hearing, and no objection as to adequacy of notice was made. Accordingly,

we shall consider the essential terms of the settlement agreement; a summary of the same follows.

The November 10, 1975 agreement is the final form of agreement between plaintiffs and the underwriters named on schedule II of the agreement. After mutually reciting that continuation of litigation will be both expensive and time-consuming, the plaintiffs and the class agree to settle and compromise all claims against the defendant underwriters for the total sum of $194,100.00. This amount represents the total of the individual commitments set forth on schedule II and an additional $16,500.00 paid by G. Kenneth Baum. (Baum has not been sued by plaintiffs and the class, but was named as a third-party defendant in an action filed by the underwriters.) Baum has separately agreed with plaintiffs and the underwriters to settle the claims against him filed by the latter for the sum of $16,500.00; when the conditions of this agreement are satisfied, plaintiffs and defendant underwriters will separately execute covenants not to sue Baum. Baum will retain the status of a party to this litigation for purposes of discovery and service of pleadings. Baum denies liability, and reserves his claims for indemnification

---

**10.** We find no occasion to pass upon whether the mutual release of claims for indemnity or contribution as between the company and the three selling officers violates public policy. In our view, it is unnecessary to reach this question. The note to 17 C.F.R. § 230.460 speaks to acceleration of a registration statement and the undertaking required of a registrant-issuer when such acceleration of the effective date of the statement is sought. The undertaking, in turn, relates to a claim for indemnity by a director, officer, or controlling person against the issuer. Here, by contrast mutual releases, not claims, are part of the settlement agreement. In *Feit v. Leasco Data Processing Equipment Corp.*, Civ.No. 69–C–1329 (E.D.N.Y. 1972) actual liability had been imposed on several of the company's directors for a violation of § 11 of the Securities Act of 1933. The corporation proposed to pay the entire amount of the judgment. The S.E.C. intervened and took the position that such a proposal was in effect indemnification of the directors in violation of public policy. Apparently the company paid the judgment and then sought court approval of a proposal whereby the guilty officers would pay the company $5,000 each in contri-

bution to the judgment previously paid. The *Leasco* court found no violation of public policy on these facts. Here, in contrast, we have before us the settlement of a dispute rather than an actual finding of liability. *Leasco,* then, in our view is readily distinguishable. In addition, we are not faced with facts where the company pays the entire settlement, since the officers here are contributing to the settlement.

**11.** *Wainwright v. Kraftco Corp.*, 53 F.R.D. 78 (N.D.Ga.1971), a case relied upon heavily by Tucker, Charno, is readily distinguishable. Here, we have not been presented with a Rule 23(e) motion which requires as a condition precedent for settlement approval, a declaration that the settling defendants are not liable in contribution to the non-settling defendants. The *Wainwright* court declined to make this ruling in advance of trial, which appears correct. See 53 F.R.D. at 81. We note *Wainwright* supports our own view; in essence non-settling defendants have no standing to object to a settlement to which they are not parties. 53 F.R.D. at 81.

or contribution against others, excluding plaintiffs and the underwriters.

The amount of $16,500.00 given in settlement of the separate third-party action initiated by the defendant underwriters is to be contributed towards the amount agreed in settlement of the plaintiffs' and the class' claims against the underwriters. Upon execution of the agreement by both sets of parties, the underwriters are to deposit the settlement funds in interest bearing accounts. Any interest on the funds is to be added to the funds available for the settlement. Court approval is required before the terms of the agreement are to become effective. Additionally, the claims of the plaintiffs asserted against the defendant underwriters are to be dismissed with prejudice. The defendants reserve all rights to claims for indemnification, contribution, or both against all persons or other named entities or groups other than the plaintiffs and Baum. The plaintiffs reserve their rights to claims which plaintiffs may have against any or all of the remaining defendants or third-party defendants in this action (excluding Baum). The agreement expressly provides that it shall not release or discharge such defendants or third-party defendants from any of the claims asserted by the plaintiffs in this action.

When the conditions set forth in the agreement are satisfied, which include requirements as to notice and the allowable percentage of class members who request exclusion, plaintiffs individually and on behalf of the class, are to execute covenants not to sue the defendant underwriters. These covenants not to sue cover all claims against the defendant underwriters that were or could have been asserted in this litigation. For purposes of discovery and service of pleadings, briefs, and comparable documents, both plaintiffs and the underwriters agree to retain the status of parties to this litigation. The agreement further provides that no costs or expenses are to be taxed against the defendant underwriters. The agreement also provides that the entry of a class action order and the continued existence of a class were material induce-

ments to commencement of negotiations and are material inducements to execution of the agreement by the defendants. In executing the settlement agreement, defendant underwriters continue to deny any liability to the plaintiffs.

This agreement was ultimately reached after class action status was certified and after appeals were denied, as we previously noted with respect to the other agreement. Negotiations began April 23, 1973 and temporarily concluded October 3, 1973. A condition of an agreement reached on this latter date was that the action be certified to be maintained as a class action. The appeals noted herein were then taken, and this apparently resulted in disagreement between plaintiffs' counsel and the underwriters' counsel as to the finality of the class action order. Once the appeals were dismissed, it was apparently the underwriters' view that a third condition of the agreement could then be fulfilled—*i. e.* seeking court approval of the agreement pursuant to Rule 23(e). Disagreement over exact terms of the agreement arose again, and negotiations continued. Due to the delay in consummation of the agreement reached in principle in 1973, the underwriters then agreed to pay an additional $10,000.00, which represented 8% interest over a fifteen-month period. Once a revised settlement amount was reached, by including the additional $10,000.00, the final form of the agreement was prepared, which is dated November 10, 1975.

The strength of plaintiffs' claims as against the settling underwriters is revealed by the statement which is filed by co-lead counsel for the class. In essence, counsel entertained serious doubt whether they could show the requisite scienter on defendants' part since they found no proof by discovery that defendants knew the true state of facts about Saxons or that they could have obtained it upon reasonable inquiry. Further, although Baum was a director of Topsy's, counsel have found no evidence that he or other "outside" directors had knowledge during the class period of the material information concerning

Saxons. For this reason, plaintiffs did not name Baum as a defendant in either their original or amended complaints. Class counsel state they have accordingly treated his payment to the underwriters, which will benefit the class by the settlement with the underwriters, as part of the settlement to be received from the underwriters and G. H. Walker and Company. Walker is listed in schedule II of the November 10 agreement as contributing by far the largest amount of the underwriter group—$72,000.00. (White, Weld & Company is to contribute this amount as successor to Walker).

The facts upon which this larger payment is based are that plaintiffs discovered an "earlier and deeper involvement with Topsy's," namely a comprehensive report prepared by Mr. William Gill, a research analyst for G. H. Walker, which in their view contained many of the misrepresentations and omissions contained in other documents published during the class period. The statement filed by White, Weld & Company, successor to Walker, states that Gill was diligent in researching his reports, but since Saxons had been a small, closely held company prior to its acquisition by Topsy's, there was no public information concerning it. Thus, it is Weld's position that to the extent, if any, Gill's reports may have misstated or omitted certain material facts as plaintiffs allege, it was because of his necessary reliance on Topsy's and its officers for his source of information. In any event, there appears to be an adequate basis for this particular contribution to the overall settlement fund.

The remaining underwriters recognize the relative weakness in plaintiffs' case against them but seek to justify settlement of these claims on a cost-of-defense basis. In their view, it is simply more economical to settle rather than to litigate further. This consideration is squarely within the business-judgment rule and illustrates why courts are hesitant to overturn judgments of this kind. Moreover, the underwriters' decision to settle inures to the benefit of the class since recovery is provided for

claims otherwise presenting difficulty of proof because of the scienter issue.

On the other side, plaintiffs recognize that due to the deteriorating financial position of many of the brokerage firms who participated in the Topsy's public offering, a collectibility problem was presented. It was also a concern that should the case against the underwriters ultimately reach trial, possible jury confusion could result because of the presence of numerous parties and resulting factual complexity. Additional expense from continuing to proceed against the underwriters would also result.

Under these circumstances, we would have grave difficulty overturning the business judgment exercised by counsel for both sides of the settling parties since the compromise reached appears reasonable. The overall amount appears equally adequate in light of the background described above, and the separate amounts contributed, $72,000.00 on behalf of Walker by White, Weld & Co., $105,600.00 on behalf of the underwriters other than Walker, and $16,500.00 by Baum, are reasonably apportioned. We note in connection with the amount to be contributed by Baum, however, that he is contributing his part of the settlement in order to avoid the expense of participating in this litigation, not because of admitted liability.

We conclude that the terms of the agreement between the plaintiffs and the class and the settling underwriters provide for a settlement that is fair, reasonable, and adequate under all the circumstances. The joint motion filed by these parties is accordingly sustained. We take this opportunity to observe that both of the settlements before us for review involve the compromise of seriously disputed claims, as the volume and nature of material in the file amply demonstrates. These settlements will put to rest a portion of this dispute.

We next consider the applications for attorneys fees and expenses which have been filed in accordance with our November 10 order. Under this order, these applications were due to be filed by December 17, 1975, prior to the February 17 hearing, in order

to allow time for perusal and objections to be raised. No class member has either filed or otherwise raised any objection to these applications. The first application we examine has been filed by co-lead counsel for the class, Mr. Tom Van Dyke and Mr. Robert C. Gordon; the second application was filed by Mr. Sheridan Morgan and Mr. Robert Loudon, which we discuss later. Time records for the attorneys involved in both applications have been presented to the court for in camera inspection in addition to the sworn affidavits filed in connection with the applications. Respective counsel for the class also filed separate statements concerning their qualifications and their experience in the securities law field. Mr. Morgan and Mr. Loudon describe their own qualifications and expertise in their application for fees.

This court, of course, has the responsibility to pass upon these applications for fees and expenses, and must consider the interests of the class in its decision to award fees and expenses from the fund established on behalf of the class. *Oppenlander, supra,* 64 F.R.D. at 605. The benefits conferred upon the class is indicated by the results achieved to date in this litigation. Here, a sizable settlement has been effected through considerable effort of counsel on behalf of the class. Many of the claimants, whose amount of loss practically precluded them from instituting suit on their own, will now be afforded opportunity to recoup at least a portion of their losses via the fund created by the settlement agreements. Without the work of class counsel, this opportunity would have been lost to those class members whose financial stake in the litigation would not have allowed them to proceed alone on the basis of economic constraints. To conduct litigation of this magnitude and complexity would have undoubtedly been beyond the reach of many claimants had they attempted to proceed individually.

The application filed by class counsel for reimbursement of their out-of-pocket expenses underscores the economic reality underlying this specialized kind of litigation. In a securities fraud case, massive discovery is often a concomitant to development of a substantial case against the defendants. It is not in the nature of this sort of litigation that the facts involved be simple. The facts often lie buried in mounds of documents which must be unearthed in arduous discovery work and then later collated and synthesized into workable form. The massive amount of work involved in this aspect of the litigation of course requires time and attention of expert counsel, since the search for facts can be obscured by the sheer volume of records and documents. The documents involved here run several hundred thousand pages in length. The number of pages of deposition testimony taken on behalf of the class exceeds twelve thousand. Travel is often required, and was required in this case, since some deponents live at a distance from the forum of litigation.

In matters pertaining solely to discovery disputes, this court has entered orders on November 6, 1974, January 2, 1975, April 9, 1975, May 21, 1975, and on July 18, 1975. Extensive briefing was involved on the questions presented and plaintiffs' counsel were participants in briefs on each of these occasions. The barriers to discovery have been legal, then, as well as factually difficult. Our own view, which we have expressed before, is that this litigation is characterized by complexity. Substantial legal issues have been more often the rule than the exception in the case. Exhibit 2 to the application filed by class counsel is the brief filed on behalf of the class concerning our order that certified this case as a class action. Exhibit 2 is sixty-seven pages in length, and it shows extensive research and thoughtful consideration. This particular work-product is but a single example of the work expended on behalf of the class and illustrates as well the complexity of the case. The court's docket sheet, which briefly records in single-space type the entry of various pleadings and briefs, now exceeds forty pages in length. The court knows from its own experience that this case has required extraordinary effort to deal with it.

The nature, extent and the quality of services rendered by counsel for the class have been of consistently high professional quality. This is evidenced by both written work submitted on behalf of plaintiffs and the class and by oral presentations before the court as well. We have also had ample opportunity to observe class counsels' efforts during the recent period when the mechanics of this class action were being developed. Counsels' attention as well as our own has been occupied heavily as our orders of November 10, November 24, December 9 (all of 1975), and our orders of January 8, January 9, January 15 and January 27 (all of 1976) quite clearly reflect.

Testimony supporting class counsels' fee application was received into evidence at the February 17 hearing from Mr. Kenton C. Granger, who qualifies as an expert in the handling of complex litigation. His own recommendation was that the fee application should be sustained in its entirety. His opinion was based upon a comparison of this litigation to similar litigation and the rates of compensation awarded therein. Since there was no advance fee arrangement between counsel and the class, the compensation for the class attorneys must come from the settlement fund. As the court in *Oppenlander* observed,

> "In awarding attorney fees in a class action, the Court is charged with the duty of being fair to class members who are viable litigants, non-appearing class members, and the attorneys whose efforts and professional abilities have produced the recovery." 64 F.R.D. at 613.

On balance, after considering these factors, as well as the public policy issues outlined in *Oppenlander* and the lack of objections to class counsels' application for fees and expenses, it is our conclusion that these applications should be and they hereby are sus-

tained. The time records submitted on behalf of class counsel disclose an amount of work that merits the amount of compensation prayed for, and we accordingly believe that the fees sought, as well as the expenses incurred, are reasonable under all the circumstances.[12]

The application filed by Mr. Morgan and Mr. Loudon requests fees in the amount of $15,000.00. Time records of these attorneys have been submitted to the court for in camera inspection, and we have reviewed these documents. This amount cannot be sustained. We find on the basis of their joint application, their supplemental affidavit, an in camera inspection of their time records, the affidavit of Mr. Robert C. Gordon, his statement at the February 17 hearing, Mr. Morgan's and Mr. Loudon's statements at the hearing, and the February 16 letter sent by Mr. Gordon to the court, that the following fees should be awarded. By agreement, Mr. Morgan and Mr. Loudon agreed that they would charge $50.00 an hour for their services on behalf of the class. We find that Mr. Loudon should receive $1,562.50 for his services. We find that Mr. Morgan should receive $2,700.00 for his services. Under the circumstances, these amounts appear reasonable and will compensate these attorneys for their services provided the class.

Accordingly, IT IS ORDERED that within ten (10) days after entry of this Memorandum and Order, settling defendants shall deposit the settlement funds in the Columbia Union National Bank and Trust Company, Kansas City, Missouri, to be deposited to the account of the plaintiffs and the class in KC–3435, *Robert Seiffer, et al. v. Topsy's International, Inc., et al.* Upon deposit of these funds, counsel for plaintiffs and the class shall acknowledge in writing such satisfaction of the settlement and deliver to counsel for settling defendants such

---

12. The fees sought here, which are approximately thirty percent of the amount recovered ($427,667.00 out of $1,419,100.00), are within the range of allowable fees. See *Oppenlander,* 64 F.R.D. at 617 (Part V). The out-of-pocket expenses total $95,962.60. The sum of the fees and expenses is $523,629.60. Members of the class were advised in paragraph five of part III of the November 25 notice that the aggregate of fees and expenses would not exceed $542,-667.00. The combined hours spent by the two law firms to which co-lead counsel belong total 8,916.

**636**

acknowledgement. Upon proof of deposit of these funds, to be made by counsel for plaintiffs and the class in an application filed with the court, the plaintiffs' complaint, as amended, will then be dismissed with prejudice as to the settling defendants named in schedule A of this order. Plaintiffs and plaintiffs' counsel are authorized and directed to execute covenants not to sue on behalf of themselves and the members of the class who have not requested exclusion after the application showing satisfaction of the settlement has been filed with the court.

IT IS FURTHER ORDERED that upon filing of the proof of satisfaction with the court, counsel for plaintiffs and the class are authorized to thereafter disburse such funds as are approved herein for the allowance of attorneys' fees and for reimbursement of out-of-pocket expenses. Distribution of the remaining funds and interest to plaintiffs and to class members shall be made by further order of the court and upon application of class counsel; the application shall state the responses, if any, of claimants whose claims class counsel have moved to disallow and reject under the terms and conditions of the court's order of November 10, 1975. No court costs shall be taxed against the settling defendants.

IT IS SO ORDERED.

### SCHEDULE A

The settling defendants are as follows: Bear, Stearns & Company; White, Weld & Company, Inc., successor to G. H. Walker & Company; William Blair & Company; H. O. Peet & Company, Inc.; First of Michigan Corporation; Johnson, Lane, Space, Smith and Company, Inc.; Kohlmeyer & Company; Sherck, Stein & Franc, Inc.; Stephens, Inc.; Stifel, Nicolaus & Company, Inc.; B. C. Christopher & Company; Ebin, Robertson & Company, Inc.; Hallowell, Sulzberger, Jenks & Company; Norris & Hirschberg, Inc.; I. M. Simon & Company; Hugh Johnson & Company, Inc.; Mark Henry & Company; and Zuckerman, Smith & Company; Topsy's International, Inc.; Jerry D. Berger; James T. House and Harry Nuell.