**Emerich RESSLER, On Behalf of Himself and All Others Similarly Situated, Plaintiff,**

v.

**Richard E. JACOBSON, Martin G. Jacobson, Marc S. Geller, and Nutmeg Industries, Inc., Defendants.**

**Civ. A. No. 90–406–CIV. T–21A.**

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 15, 1992.

Leonard Barrack, Gerald J. Rodos, and Samuel R. Simon, Barrack, Rodos & Bacine, Philadelphia, PA, and John R. Bush, Bush Ross Gardner Warren & Rudy, P.A., Tampa, FL, for plaintiff.

John R. Kiefner, Jr., Riden, Earle & Kiefner, P.A., St. Petersburg, FL, for defendants.

1. On December 10, 1992, the Court entered a final judgment in this case approving the terms of a proposed Stipulation of Settlement submitted by the parties. The Court now deems it appropriate to award class counsel attorneys' fees and expenses.

## MEMORANDUM OPINION

NIMMONS, District Judge.

### I. INTRODUCTION

There is presently pending in this cause a joint application by class counsel for an award of attorneys' fees and reimbursement of expenses.[1] In their petition, class counsel jointly make application to this Court for an award of $232,500 in attorneys' fees, plus interest, representing 30% of the gross Settlement Fund of $775,000 in this case, and $40,738.97 in out-of-pocket expenses, plus interest, to be paid out of the Settlement Fund created for the class through the efforts of said counsel.[2] Any fees and expenses awarded by this Court will be payable from the $775,000 in settlement proceeds, plus interest.

In support of their joint application, class counsel submitted a Joint Petition Of Plaintiff's Counsel For Award Of Fees And Reimbursement Of Litigation Expenses, with separate affidavits on behalf of each of the law firms, and an affidavit submitted by plaintiff's economic and damages consultant, Princeton Venture Research. At the final hearing on the proposed settlement conducted by the Court on October 9, 1992, plaintiff's counsel explained in detail the nature of the work performed, and discussed the criteria pertinent to fee awards in class actions in this Circuit. No one appeared at the final settlement hearing to voice objection to the amount of attorneys' fees and expenses that class counsel are seeking herein.

### II. LEGAL STANDARDS APPLICABLE TO FEE AWARDS

 Attorneys who represent a class, and achieve a benefit for the class members, are entitled to be compensated for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375,

2. Class counsel, petitioners here, are the Philadelphia law firm of Barrack, Rodos & Bacine, and the Tampa law firm of Bush Ross Gardner Warren & Rudy, P.A.

392–93, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970).

In class action suits, where a fund is recovered and fees are awarded by the court from the fund, the Supreme Court has indicated that computing fees as a percentage of the common fund recovered is the proper approach. *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1974). The Court of Appeals for the Eleventh Circuit has concurred in that view, and under *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir.1991) ("*Camden I*"), the Eleventh Circuit requires as a matter of substantive law that district courts within this Circuit compute fees in a "common fund" case such as this using the percentage-of-the-fund approach, stating:

> After reviewing *Blum*, the Task Force Report, and the foregoing cases from other circuits, *we believe that the percentage of the fund approach is the better reasoned in a common fund case.* Henceforth *in this circuit*, attorneys' fees awarded from a common fund *shall* be based upon a reasonable percentage of the fund established for the benefit of the class. (emphasis added).

To determine the adequacy of the requested compensation, then, this Court must under *Camden I* avoid the "lodestar" approach and apply the percentage-of-the-recovery approach.

## III. THE FEE REQUESTED IN THIS ACTION IS REASONABLE

■ Given the excellent benefits conferred upon the Class as a result of Petitioners' work, the complex nature of the litigation, the risks faced, the quality of work performed, and the prompt and efficient manner in which this Litigation was resolved, the Court as explained below finds under the standards established in this Circuit that the fee requested by Petitioners when considered in terms of a percentage of the fund—30% of the Settlement Fund plus interest as of the date of the entry of the Court's order awarding fees and expenses—is fair and reasonable when compared to the percentages customarily found in standard contingency fee arrangements or awarded in class actions.

### A. Use of This Circuit's Standards for Awarding Fees Supports the Requested Fee

Under the Eleventh Circuit's decision in *Camden I*, the factors set forth in the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) "continue to be appropriately used in evaluating [and] setting ... percentage fee awards in common fund cases." *Id.*, 946 F.2d at 775. Examination of the enumerated *Johnson* factors demonstrates that 30% is an appropriate fee for the results achieved in this action.[3]

### (1) The Time and Labor Required

Petitioners expended 787.8 hours in the prosecution of this lawsuit. The firm of Barrack, Rodos & Bacine, which was primary counsel for plaintiff, expended 762.7 hours and the firm of Bush Ross Gardner Warren & Rudy, P.A., local Florida counsel for plaintiff, expended 25.1 hours. The total "lodestar" for the services of Petitioners is $200,994.75 (hours expended multiplied by the regular hourly rates of counsel).[4] Clearly,

---

**3.** *Johnson* factor no. 4, the preclusion of other employment, is inapplicable to this action and is therefore not discussed. The sequential enumeration of the *Johnson* factors has, however, been retained here for purposes of clarity of presentation in this memorandum opinion.

**4.** Under the "lodestar" analysis, which is *not* the rule applied in this Circuit but which is still used in some Circuits, the fee requested would be a 1.16 multiple of the lodestar. Such an award is extremely reasonable, as courts in common fund cases regularly award multiples of 2 to 3 times lodestar in attorney's fees to reflect the quality of the work performed and the risks undertaken. *See, e.g., Harris v. Union Electric Co.*, [1985–1986

Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,352, 1985 WL 29961 (E.D.Mo.1985) (multiple of 3.5 awarded); *Hinckley v. E.I. DuPont de Nemours & Co.*, 583 F.Supp. 11 (E.D.Pa.1983) (multiple of 3.0 awarded); *Municipal Authority of Bloomsburg v. Pennsylvania*, 527 F.Supp. 982 (M.D.Pa. 1981) (multiple of 4.5 awarded); *In re Cenco, Inc. Securities Litigation*, 519 F.Supp. 322 (N.D.Ill.1981) (multiple of 4.0 awarded); *In re Gypsum Cases*, 386 F.Supp. 959 (N.D.Cal.1974) *aff'd*, 565 F.2d 1123 (9th Cir.1977) (multiple of 3.0 awarded); *In re Trilogy Securities Litigation*, C–84–20617(A) (N.D.Cal.1986) (multiple of 4.37 awarded); *In re Oak Industries Securities Litiga-

then, a substantial effort was expended in the time since this case began. This lawsuit was complicated and intense. The motions—plaintiff's class motion, defendants' dismissal motion, and defendants' stay motion—were all fully briefed. Extensive discovery occurred, including the preparation of interrogatories and document requests, Counsel's review and analysis of thousands of documents, and the depositions of Nutmeg's top present and former executives. Moreover, the proposed settlement was consummated only after extensive, complex, and delicate discussions and drafting sessions between counsel. Clearly, significant attorney's time and labor were required to prosecute this case on a wholly contingent basis.

### (2) The Novelty and Difficulty of the Questions Involved

The difficulty of the questions involved here was considerable. Plaintiff faced all the multi-faceted and complex legal questions endemic to § 10(b) litigation, including proving *scienter,* materiality, causation, and damages. Moreover, the factual issues involved in this action were difficult ones, and included an exploration of the manufacturing processes, and the computer operations that largely control those processes, of a leading manufacturer of wearing apparel. The difficulty of the legal and factual questions presented significant hurdles to achieving this settlement on behalf of the Class.

### (3) The Skill Required to Perform the Legal Service Properly

■ In awarding counsel fees to Petitioners, the Court recognizes that it took experienced and competent counsel to achieve the settlement approved by the Court. The standing and prior experience of plaintiff's counsel are relevant in considering applications for counsel fees. *E.g., Angoff v. Goldfine,* 270 F.2d 185, 192 (1st Cir.1959); *Paris v. Metropolitan Life Insurance Company,* 94 F.Supp. 356, 358 (S.D.N.Y.1950). Petitioner Barrack, Rodos & Bacine is recognized nationally to be a leading and skillful practitioner in the field of complex class actions, and petitioner Bush Ross Gardner Warren & Rudy is certainly one of the more skilled

firms in the state of Florida. Moreover, in assessing quality, the Court has considered the quality of the *opposition* as well as the standing of plaintiff's counsel. *See, e.g., Trans World Airlines, Inc. v. Hughes,* 312 F.Supp. 478 (S.D.N.Y.1970), *aff'd as modified,* 449 F.2d 51 (2nd Cir.1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Here, defendants were represented by Riden, Earle & Kiefner, P.A., a firm that ranks among the most prominent and skilled law firms in Florida, as well as by the Washington, D.C. firm of Wilmer, Cutler & Pickering, both of whom represented their clients vigorously and capably.

■ In addition, Petitioners litigated the action and obtained this excellent settlement without the benefit of any active assistance from any governmental agency. This is a significant factor supporting Petitioners' fee request. *In re Warner Communications Securities Litigation,* 618 F.Supp. 735, 748 (S.D.N.Y.1985); *Bullock v. Administrator of Estate of Kircher,* 84 F.R.D. 1, 16 (D.N.J. 1979).

### (4) The Customary Fee

The "customary fee" in a class action lawsuit is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis. The rates at which Petitioners recorded the time of their attorneys and paralegals for this lawsuit are the ordinary and customary market rates that it charges its fee-paying clients. The Supreme Court in *Blum v. Stenson, supra,* 465 U.S. at 895, 104 S.Ct. at 1547, held that "reasonable fees ... are to be calculated according to the prevailing market rates in the relevant community," *i.e.,* where counsel maintain their office—here, Philadelphia and Tampa. *Accord, Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988); *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 547 (S.D.Fla.1988), *aff'd,* 899 F.2d 21 (11th Cir.1990).

### (5) Whether the Fee is Fixed or Contingent

Here, of course, the fee was entirely contingent, which meant that, had Petitioners

*tion,* Master File No. 83–0537–G(M), 1986 WL 28907 (S.D.Cal.1986) (multiple of 4 awarded).

recovered nothing for the Class, they would not have been entitled to any fee at all. The substantial risks of this litigation abundantly justify the fee requested herein.

### (6) *Time Limitations Imposed by the Client or the Circumstances*

This *Johnson* factor is not directly applicable to this case. However, the Court notes that plaintiff's counsel concluded a complex securities fraud case, of the type that often takes four to six years to resolve, in only two and a half years, thus ensuing that the funds recovered will be distributed to the members of the Class within three years of the commencement of litigation.

### (7) *The Amount Involved and the Results Obtained*

It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained. *Rodriquez v. Taylor,* 569 F.2d 1231, 1247 (3rd Cir.1977). Class counsel, through their efforts, have achieved a settlement of $775,000, which funded virtually all the costs of providing notice to the Class, and of which $750,000, or 97%, has been earning interest at market rates for several months for the benefit of the Class.

A settlement of $775,000 is certainly a significant achievement in a case as fraught with peril as the litigation at bar. The settlement achieved in this lawsuit eliminates the potential risk of non-recovery. Instead of facing additional years of costly litigation, class members will now share in a substantial settlement fund.

### (8) *The Experience, Reputation, and Ability of the Attorneys*

The standing and experience of plaintiff's counsel was an important factor in the settlement of this action. Plaintiff's counsel have tried class actions to a jury. In fact, Petitioner Barrack, Rodos & Bacine has tried at least four securities class actions to a jury within the last several years, and has been successful in the appellate courts as well. *See, e.g., Shapiro v. UJB Financial Corp.,* 964 F.2d 272 (3rd Cir.1992); *In re Control Data Corp. Securities Litigation,* 933 F.2d 616 (8th Cir.1991); *In re Craftmatic Securities Litigation,* 890 F.2d 628 (3rd Cir.1990);

and *Herskowitz v. Nutri/System, Inc.,* 857 F.2d 179 (3rd Cir.1988). This jury and appellate experience has earned the respect of defense counsel and no doubt contributed to the efficient prosecution and the settlement of this action.

### (9) *The "Undesirability" of the Case*

That this case may be classified as "undesirable" is demonstrated by the fact that no plaintiff other than Emerich Ressler filed suit. In many securities fraud cases a number of different lawsuits are filed by different plaintiffs and law firms, who then combine their efforts to prosecute the action jointly. Here, no law firm in the country, other than Barrack, Rodos & Bacine, believed that this action was worth pursuing on a contingent fee basis. Moreover, Petitioners' investigation of the underlying facts of this action and their prosecution of the litigation were undertaken without the benefit of the assistance of any governmental entity, including the Securities and Exchange Commission or any regulatory agency of the State of Florida.

### (10) *The Nature and the Length of the Professional Relationship With the Court*

Petitioners had not represented the named class plaintiff before he approached the Barrack, Rodos office to ask it to undertake an investigation into the underlying facts and circumstances of this lawsuit. Thus, to the extent this factor may have independent significance in the context of a class action, it militates in favor of the 30% fee award sought here because plaintiff did not have a "track record" with the law firms that agreed to prosecute this action on his behalf.

### (11) *Awards in Similar Cases*

Awards of 30% or more of a settlement fund are not uncommon in § 10(b) common fund cases such as this. *See, e.g., Zinman v. Avemco Corp.,* [1978 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 96,325, 1978 WL 5686 (E.D.Pa.1978) (50% of recovery); *Howes v. Atkins,* 668 F.Supp. 1021 (E.D.Ky.1987) (40% of recovery); *Van Gemert v. Boeing Co.,* 516 F.Supp. 412 (E.D.N.Y.1981) (36.2%); *In re Franklin Nat'l Bank Securities Litigation,* [1980 Transfer Binder] Fed.Sec.L.Rep.

(CCH) ¶ 97,571 (E.D.N.Y.1980) (34%); *Clarke v. Amerada Hess Corp.*, 500 F.Supp. 1067, 1075 (S.D.N.Y.1980) (30%); *Eltman v. Grandma Lee's Inc.*, [1986–1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,798, 1986 WL 53400 (E.D.N.Y.1986) (30%). Indeed, after conducting an exacting review of attorney fee awards in common fund cases, Judge Patel, in *In re Activision Securities Litigation*, 723 F.Supp. 1373 (N.D.Cal.1989), concluded that attorneys' fee should equal 30% of the total recovery "absent extraordinary circumstances." *Id.*, 723 F.Supp. at 1378. *See, e.g., Bello v. Integrated Resources, Inc.*, 1991 Fed.Sec.L.Rep. (CCH) ¶ 95,731 at 98,-471, 1990 WL 200670 (S.D.N.Y.1990) (holding that the common range of fees is 20–50 percent); *In re M.D.C. Holdings Securities Litigation*, 1990 Fed.Sec.L.Rep. (CCH) ¶ 95,474 at 97,490–92, 1990 WL 454747 (S.D.Cal.1990) (collecting cases and awarding 30%); *Seiffer v. Topsy's Internat'l, Inc.*, 70 F.R.D. 622, 635 n. 12 (D.Kan.1976) (30% fee award "within the range of allowable fees").

### (12) *Other Camden I Criteria*

In *Camden I*, the Eleventh Circuit stated that "[o]ther pertinent factors [to assessing an appropriate award of fees utilizing the percentage-of-the-fund approach] are [1] the time required to reach a settlement, [2] whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, [3] any non-monetary benefits conferred upon the class by the settlement, and [4] the economics involved in prosecuting a class action." *Id.*, 946 F.2d at 775. The Court therefore addresses each of these factors below.

### (a) *The Time Required to Reach a Settlement*

Counsel for the parties began discussing the possibility of settlement in the early fall of 1991. The Settlement Agreement was finally executed on July 13, 1992. Thus, this lawsuit resulted in settlement 2¼ years after it was commenced and some 9–10 months after settlement discussions had begun, reflecting the care and deliberation with which plaintiff's counsel approached the entire settlement process.

### (b) *Substantial Objections to the Settlement or Requested Counsel Fees*

■ Plaintiff's counsel caused over 3890 copies of the Class Notice to be mailed to potential class members. Plaintiff's counsel caused the form of Notice approved by the Court to be published in the national edition of *The Wall Street Journal* on August 20, 1992. The time for filing objections to the settlement or to the requested amount of attorney's fees expired on September 21, 1992. As of that date, not one objection had been filed. The fact that there are no objections to either the Settlement or to Petitioners' request for attorney's fees is strong evidence of the propriety and acceptability of that request. *See, e.g., Fisher Bros., Inc. v. Mueller Brass .Co.*, 630 F.Supp. 493, 498 (E.D.Pa.1985); *In re Art Materials Antitrust Litigation*, 1984–1 Trade Cas. (CCH) ¶ 65,-815 at 67,417, 1983 WL 1947 (N.D.Ohio 1983).

### (c) *Non–Monetary Benefits*

Unlike some settlements where the plaintiff class is compelled to accept part of the settlement in "paper" (*e.g.*, warrants to purchase stock at a future date in the defendant company, or stock itself)—which some class members may not want—this is an all-cash settlement. It thus provides the best relief possible to class members: the prompt payment of money.

### (d) *The Economics Involved in Prosecuting a Class Action*

This factor also implicates the *Johnson* contingent fee factor. The Court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received ńo compensation whatsoever. Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award. *See, e.g., Jones v. Central Soya Co.*, 748 F.2d 586, 591 (11th Cir.1984); *Walters v. City of Atlanta*, 652 F.Supp. 755, 759 (N.D.Ga.1985). *See also Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir.1980); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid

more when successful than those who are assured of compensation regardless of result."). In evaluating this factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel receive little or no fee.

### B. *Public Policy Considerations*

In addition to the 12 *Johnson* factors and the four additional *Camden I* factors discussed above, public policy considerations play an important role in a case such as this.

 Attorneys who bring class actions are acting as "private attorneys general" and are vital to the enforcement of the securities laws. Accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions. *See In re Warner Communications Securities Litigation,* 618 F.Supp. 735, 750–51 (S.D.N.Y.1985).

## IV. *THE EXPENSES INCURRED BY PETITIONERS*

As noted in the Affidavits of Counsel submitted to the Court, the out-of-pocket expenses which Petitioners themselves incurred and for which Petitioners seek reimbursement in connection with this litigation total $11,429.78. The Court finds and concludes that these expenses were reasonable and necessary to obtain the settlement reached in this case.

In addition, plaintiff's counsel retained Princeton Venture Research, Inc. ("PVR") as their expert for materiality and damages issues. The expenses of PVR are $29,309.19, an amount that this Court, on the basis of the detailed affidavit submitted by PVR and the October 9, 1992, hearing, finds and concludes was reasonable and necessary to obtain the settlement reached in this case. Accordingly, the Court will award a total of $40,738.97 as reimbursement of Petitioners' out-of-pocket costs and expenses.

## V. *CONCLUSION*

For the reasons stated herein, the Court awards Petitioners 30% of the gross Settlement Fund, or $232,500.00, as attorneys' fees, plus interest since July 30, 1992, and $40,-738.97 as reimbursement of expenses in the prosecution of this litigation, plus interest since July 30, 1992.

A separate order awarding fees and expenses will be entered in accordance with this memorandum opinion.

**DONE** and **ORDERED.**