### In re ACTIVISION SECURITIES LITIGATION.

### No. C 83–4639(A)–MHP.

United States District Court, N.D. California.

Oct. 3, 1989.

William S. Lerach, John E. Grasberger and Kristin M. Cano, Wilberg Weiss Bershad Specthrie & Lerach, San Diego, Cal., Leonard Barrack, Gerald J. Rodos and Kirk Hulett, Barrack, Rodos & Bacine, Philadelphia, Pa., Arthur N. Abbey, Abbey & Ellis, New York City, Richard D. Greenfield, Carole A. Broderick and R. Bruce McNew, Greenfield, Chimicles & Lewis, Haverford, Pa., and David B. Gold, Paul F. Bennett and Richard D. Harmon, San Francisco, Cal., for plaintiffs.

Peter Kreindler and Ronald C. Redcay, Hughes Hubbard & Reed, Los Angeles, Cal., for Coopers & Lybrand.

Jeffrey Facter, Tower C. Snow, Gilbert R. Serota and Eric K. Hansen, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for Activision, Inc., Allan Epstein, Robert K. Faught, Harvey N. Gillis, James H. Levy, John M. Lillie, Frank A. Mainero, Richard W. Muchmore, Thomas W. Pomeroy and Arthur F. Schneiderman.

Patrick J. Mahoney, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for Genstar Pacific Corp., Sutter Hill Ventures, Paul M. Whythes, David L. Anderson, California Partners and G. Leonard Baker, Jr., Drapers Associates, Inc.

Brenda Woodson, John N. Hauser and Philip R. Rotner, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., and Robert F. Wise, Jr. and Henry King, Davis, Polk & Wardwell, New York City, for Morgan Stanley & Co., Inc., L.F. Rothschild, Unterberg, Towbin.

Charles R. Breyer and Richard H. Abramson, Coblentz, Cahen, McCabe & Breyer, San Francisco, Cal., for Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

Steven M. Schatz, Dana Haviland and Mary Anne Rodgers, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., for Data General Corp.

Henry L. King, Robert F. Wise, Jr., Lauren B. Homer and Lisa A. Huestis, Davis Polk & Wardwell, New York City, for Underwriter defendants.

## OPINION

PATEL, District Judge.

This case has followed the all too familiar path of large securities cases. It was filed as a class action by a number of well-recognized lawyers who specialize in plaintiffs' securities litigation. The complaint named the usual cast of defendants—the corporation issuing the shares, in this case when the corporation went public; the officers and directors; the underwriters; the corporation's accountants; and a variety of venture capital defendants who sold their shares at or near the time the corporation went public. Various defendants moved to dismiss and the case moved lugubriously through the pleadings phase. Discovery assumed its usual massive proportions, and finally, as the case wound down toward trial, settlement negotiations became serious and were aggressively pursued. On the eve of trial, after the parties had expended significant attorneys' time and, hence, accumulated the routinely anticipated hours and fees, the case was settled.

Then began the process which all too often consumes a disproportionate share of the court's time, the application for attorneys' fees. It is at this point in these and other common fund cases that the court is abandoned by the adversary system and left to the plaintiff's unilateral application and the judge's own good conscience. Rarely do the settling defendants, who have created the pool of money from which the attorneys' fees are awarded, offer any counterpoint; rarely do members of the class come forward with any response or opposition to the fees sought. There are no *amici curiae* who volunteer their advice.

For its guidance during this solitary inquiry, the court is confronted with a mountain of computerized billing records and, of course, the obligatory *Lindy* or *Kerr* factors. *See Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Stan-*

dard Sanitary Corp., ("Lindy I"), 487 F.2d 161 (3d Cir.1973), aff'd in part and vacated in part, 540 F.2d 102 (3d Cir.1976) ("Lindy II"); Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir.1975), cert. denied sub nom., Perkins v. Screen Extras Guild, Inc., 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Lindy established the "lodestar" system for calculation of fees. Under this system the court determines the hours reasonably expended and a reasonable hourly rate. The product of these two factors is the "lodestar" to which a multiplier may be applied in appropriate circumstances. Kerr is this circuit's adoption of the Fifth Circuit formulation in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). Under Johnson and Kerr, a twelve-factor analysis is applied. The Lindy and Kerr–Johnson approaches are not dissimilar. However, the latter method is the more cumbersome and includes factors that are often inapplicable to a particular case.

Courts have pursued a number of alternatives at the fee application stage. Some, by themselves or with the assistance of a magistrate, have waded through the computer printouts, which often represent years of work by several firms, their partners, associates, and paralegals. Others have appointed special masters familiar with the field and with attorney billing to perform the details of the task and to make a recommendation. The special master is then paid from the common fund. This court has used both of these alternatives. Undoubtedly, there are more creative ones that other courts have found. What is curious is that whatever method is used and no matter what billing records are submitted to the Lindy or Kerr–Johnson regimen, the result is an award that almost always hovers around 30% of the fund created by the settlement.

The question this court is compelled to ask is, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only do the Lindy and Kerr–Johnson analyses consume an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fee petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach there is little incentive to arrive at an early settlement. The history of these cases demonstrates this as noted below in the discussion of typical percentage awards.

Adoption of a policy of awarding approximately 30% of the fund as attorneys' fees in the ordinary case is well-justified in light of the lengthy line of cases which find such an award appropriate and reasonable before or after superimposing the Lindy or Kerr factors. Several years of this practice and the body of case law across the circuits validate this approach. The Supreme Court has accepted it. In Blum v. Stenson, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984), the Court noted approvingly the use of a percentage of the common fund to set attorneys' fees in common fund cases. In fact, the language of the note appears to assume that the percentage approach is routine. Distinguishing attorneys' fee determinations under fee shifting statutes such as 42 U.S.C. § 1988, the Court observed:

> Unlike the calculation of attorney's fees under the "common fund doctrine," where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation.

Id.

The Third Circuit, home of the Lindy formulation, recently criticized its application in common fund cases and recommended a return to a percentage of the fund approach. In the Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237 (1985), the Task Force concluded that the Lindy method was a "cumbersome, enervating, and often surrealistic process of preparing and evalu-

ating fee petitions that now plagues the Bench and Bar...." *Id.* at 258. According to the Task Force, the percentage scheme with appropriate judicial supervision would ordinarily be adequate to protect the integrity of the fee award process. It recommended that early in the litigation the court set or "negotiate" a percentage-based fee and offered a number of suggestions for fashioning a mechanism for fee setting. *Id.* at 255–58. This court agrees with the Task Force's conclusion that a number of salutary effects can be achieved by this procedure, including removing the inducement to unnecessarily increase hours, prompting early settlement, reducing burdensome paperwork for counsel and the court and providing a degree of predictability to fee awards. *Id.* at 258.

Other district courts confronted with fee applications have reached the same conclusion. *See, e.g., Mashburn v. Nat'l Healthcare, Inc.,* 684 F.Supp. 679 (M.D.Ala.1988) (although using the lodestar approach, court noted that the majority of common fund awards range between 20% and 30% of the fund and that such amounts tend to be the rule of thumb); *Edmonds v. United States,* 658 F.Supp. 1126 (D.S.C.1987) (applied lodestar where fee method contested by defendants, but found that the percentage approach was preferable in a common fund case); *Phemister v. Harcourt Brace Jovanovich, Inc.,* 1984–2 Trade Cas. (CCH) ¶ 66,234 (N.D.Ill.1984) (agreed with other district courts which had used the percentage of fund calculation and cited to a number of those cases).

*Mashburn, supra,* contains an excellent discussion of the current status of the fee award practice in common fund cases. The decision gathers together the recent critical commentaries and authorities in the area. It is not necessary to repeat those here. All of them criticize the use of *Lindy* or *Kerr–Johnson* in common fund cases and recommend a percentage approach. It has been wisely stated by Professor Coffee that:

> If one wishes to economize on the judicial time that is today invested in monitoring class and derivative litigation, the highest priority should be given to those reforms that restrict collusion and are essentially self-policing. The percentage of the recovery award formula is such a "deregulatory" reform because it relies on incentives rather than costly monitoring. Ultimately, this "deregulatory" approach is the only alternative to converting the courts into the equivalent of public utility commissions that oversee the plaintiff's attorney and elaborately fix the attorney's "fair" return.

Coffee, *Understanding the Plaintiffs' Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions,* 86 Colum.L.Rev. 669, 724–25 (1986).

One circuit has explicitly approved the percentage approach in holding that the "'common fund' doctrine recognizes percentage awards and is not restricted purely to the lodestar method." *Bebchick v. Wash. Metro. Area Transit Comm'n,* 805 F.2d 396, 407 (D.C.Cir.1986). In *Bebchick,* the court determined the lodestar and the multiplier with a thorough consideration of each of these components. The court still ended up with an attorneys' fee award that was approximately 25% of the common fund and justified that amount as equitable. *Id.* at 405.

In another recent decision, the Seventh Circuit described the difference between the common fund and statutory fee-shifting bases for attorneys' fees. *Skelton v. Gen. Motors Corp.,* 860 F.2d 250 (7th Cir.1988), *denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). *Skelton* involved class action consumer claims under the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act ("Magnuson–Moss Act"), 15 U.S.C. §§ 2301–2312. That Act contains a fee-shifting provision. The parties ultimately settled the action and as a part of the settlement established a fund of $17 million. The district court had awarded a fee representing approximately 11% of the fund, but had denied the attorneys' request for a multiplier of 75%.

The court of appeals noted that there is greater reluctance to award multipliers in fee-shifting or "statutory" cases than in

common fund or "equitable" cases. *Id.* at 253. Despite the differences, the court found that a risk multiplier was not precluded under the Magnuson–Moss Act and instructed the district court to reconsider whether a 75% or less enhancement was appropriate. *Id.* at 258. It is interesting that after its lengthy discussion of the doctrinal differences between the two methods, the court still indicated the same approach for both types of cases—calculation of the lodestar and, where justified, determination of the multiplier.

Judge Peckham of this court has observed that the Ninth Circuit, while adhering to the *Kerr–Johnson* factors, "has not, however, disapproved the use of the percentage of recovery approach in an appropriate case." *Kirkorian v. Borelli,* 695 F.Supp. 446, 455 (N.D.Cal.1988). Nevertheless, after faithfully applying the *Kerr–Johnson* methodology to a class action securities settlement where a fund of $4 million was created, the court still awarded attorneys' fees of approximately 25% of the fund. *Id.* at 456.

This week this circuit for the first time acknowledged that the percentage method may be a better approach in some cases, referring to *Skelton* and *Bebchick. Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir.1989). Citing only to *Mashburn,* the court noted the acceptance of 25% as the benchmark from which the award may be adjusted upward or downward. *Id.* 271. The court concluded that "25 percent has been a proper benchmark figure, . . ." and any adjustment should be "accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances." *Id.* The Ninth Circuit's opinion does not appear to foreclose, upon appropriate findings, the setting of a different benchmark, since it left "to the district court the task of determining what this reasonable percentage should be." *Id.* The 25% was given for guidance and the court indicated it would approve use of that figure. As documented by the lengthy list of cases below, this court finds that in most recent cases the benchmark is closer to 30%. Therefore, the court finds that a figure of approximately 30% is substantially justified.

This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method. Most of these cases achieve this result after lengthy motion practice, volumes of discovery, and hence, the accumulation of extensive attorney time on behalf of all parties. In *Wesely v. Spear, Leeds & Kellogg,* 711 F.Supp. 713, 719 (E.D.N.Y.1989), the court reduced a request for 23% of the fund to 19%, finding it within the normal range, albeit at the lower end of that range for the Second Circuit. The court also noted the minimal risk of protracted litigation because the case involved a single claim, a single defendant and a small class. *Id.* at 714. In *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.,* [Current Volume] Fed.Sec.L.Rep. (CCH) ¶ 94,376, 1989 WL 73211 (C.D.Cal.1989), an award of 25% of the settlement fund was sought and approved. *Id.* at 92,465. The court used the *Kerr–Johnson* factors to justify the award and the settlement was achieved after all general formal discovery had been completed, motions for summary judgment adjudicated and the case was ready for trial.

The case of *In re Public Serv. Co. of Ind. Derivative Litig.,* 125 F.R.D. 484 (S.D. Ind.1988), had been pending for four years and only after a significant number of depositions and many documents had been exchanged did it settle. The court anticipated it would be two more years before the case was ready for trial. By use of the lodestar method the court awarded a fee that was approximately 23% of the common fund. *Id.* at 487.

The court in *Mashburn, supra,* awarded the fee requested which was 19.5% of the fund, noting it was below the usual range, but also commenting on the results achieved at an early stage of the litigation. *Mashburn, supra,* 684 F.Supp at 693. The case was settled within one year of the filing of the complaint. In arriving at its decision, the court used the lodestar meth-

od, but also analyzed the percentage approach and justified it on that basis as well. *Id.* at 697 n. 8. At note 8, the court enumerated many common fund cases and included the percentage awards granted. *Id.*

The district court for the Southern District of New York also enumerated a number of common fund cases, many from the Southern and Eastern Districts of New York, where there are large numbers of security cases. In *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 749–50 (S.D.N.Y.1985), *aff'd* 798 F.2d 35 (2d Cir.1986), Judge Keenan concluded that the fees range from 20% to 50%. The average of the fees in the sixteen cases listed in *Warner* is 30.06%. The plaintiffs' attorneys in *Warner* asked for a fee of slightly less than 25% of the fund; the court awarded a fee of approximately 25%.

A review of the cases cited in *Mashburn* and *Warner* and this court's own analysis of other recent cases shows that the benchmark is at approximately 30% of the fund. *See, e.g., Golden v. Shulman,* [1988–89 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,060, 1988 WL 144718 (E.D.N.Y. 1988) (calculating lodestar, applying multiplier and finding that 30% is within range and justified; action pending for three years, class had been certified and significant amount of discovery completed); *In re AIA Indus., Inc. Sec. Litig.,* No. 84–2276, 1988 WL 33883 (E.D.Pa. March 31, 1988) (33% awarded after substantial discovery done and lengthy settlement negotiations; case pending approximately 4 years); *Sherin v. Smith,* [1987–88 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,582, 1987 WL 18851 (E.D.Pa.1987) (award including multiplier 27.9%; court commented on the efficiency with which the case was resolved and took that into consideration in setting fee); *In re Fiddler's Woods Bondholders Litig.,* [1987–88 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,537, 1987 WL 19239 (E.D.Pa.1987) (award of 32.7% in settlement entered into mid-trial); *Greene v. Emersons Ltd.,* [1987 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,263, 1987 WL 11558 (S.D.N.Y.1987) (fees and costs were 46.2% in this protracted case taking over ten years to resolve);

*Spencer v. Comserv Corp.,* [1987 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,124, 1986 WL 15155 (D.Minn.1986) (25% award in action involving substantial motion practice, discovery and hard fought class certification); *Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 640 F.Supp. 697 (S.D.Ohio 1986) (25% awarded where case tenaciously litigated over four year period, tens of thousands of documents produced, many depositions taken); *Fickinger v. C.I. Planning Corp.,* 646 F.Supp. 622 (E.D.Pa.1986) (33% given in case pending for five years, plaintiffs had survived summary judgment and a number of other motions, and done significant amount of discovery); *Friedlander v. Barnes,* [1986–87 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,754, 1986 WL 5517 (S.D.N.Y.1986) (approximately 30% in case pending for two years where class certified, motion for summary judgment successfully opposed, substantial discovery and trial preparation completed); *Eltman v. Grandma Lee's, Inc.,* [1986–87 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,798 (E.D.N.Y.1986) (33% granted after four years of extensive discovery, motions and settlement negotiations).

Reviewing this history the court is compelled to conclude that the accepted practice of applying the lodestar or *Kerr–Johnson* regime to common fund cases does not achieve the stated purposes of proportionality, predictability and protection of the class. It encourages abuses such as unjustified work and protracting the litigation. It adds to the work load of already overworked district courts. In short, it does not encourage efficiency, but rather, it adds inefficiency to the process.

Therefore, this court concludes that in class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by

counsel and court in dealing with voluminous fee petitions.

In this case, the Special Master, Jerome I. Braun, has done a skillful job of thoroughly analyzing the attorney billing records, declarations, and documentation in light of *Lindy* and the *Kerr–Johnson* factors. The court adopts and approves the Special Master's Report and awards fees accordingly.

In the future, however, the court will opt for the percentage approach in common fund cases. This case demonstrates the reasons as discussed above. After three years of litigation, substantial discovery and motion practice, and on the eve of trial, a settlement was reached from which the attorneys will receive 32.8%, 22% of which was for attorneys' fees, the remainder being expenses. A similar result could have been achieved much earlier in the litigation. With early disposition there are fewer expenses to be deducted from the settlement fund, thereby creating an incentive of receiving a greater percentage of the fund in attorneys' fees. The integrity of the attorneys' fee application process would be enhanced and the class members would receive at least the same benefits and receive them earlier.

For the reasons stated above and in the Special Master's Report, the court awards the amount of $1,161,413.81 in attorneys' fees and $398,705.55 in expenses for a total of $1,560,119.36 or 32.8% of the settlement fund. The fees and costs are to be paid in the manner set forth on page thirty of the Report and apportioned in accordance with the proportions reflected in the adjusted totals contained in the appendix to the report.

IT IS SO ORDERED.