**Sarah HARMAN, et al., Plaintiffs,**

**v.**

**LYPHOMED, INC., et al., Defendants.**

**No. 88 C 0476.**

United States District Court,
N.D. Illinois, E.D.

Feb. 27, 1990.
On Motion For Reconsideration
April 4, 1990.

Jules Brody, Mark Levine, Stull, Stull & Brody, New York City, Lawrence Walner, Daniel A. Edelman, Lawrence Walner & Associates, Ltd., Chicago, Ill., for plaintiffs.

William R. Carney, John B. Bitner, Larry L. Thompson, John W. Rotunno, Bell, Boyd & Lloyd, Chicago, Ill., George J. Casson, Jr., James E. O'Halloran, Jr., Clifford G. Kosoff, O'Halloran, Kosoff & Miller, P.C.,

Northbrook, Ill., Thomas A. Foran, Nicholas J. Etten, Stephen A. Gorman, Foran Wiss & Schultz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

■ The court has previously approved the settlement of this class action. Still pending is the petition for attorney's fees, which are to be paid out of the settlement fund. The class received a base settlement amount of $9,900,000. As of January 31, 1990, the settlement fund also included an additional $600,000 [1] of interest. The fund has not yet been distributed to the class, apparently pending resolution of the attorney's fees issue. One member of the class appeared at the settlement hearing and raised objections to the fee petition. Regardless of how many class members object to the fee petition, this court has a duty to determine if the fees are reasonable. *Purdy v. Security Savings & Loan Association*, 727 F.Supp. 1266, 1269 (E.D. Wis.1989).

Counsel for plaintiffs request a percentage of the base settlement amount. They request an award of 30% of the base settlement amount, which is $2,997,000. Alternatively, counsel request a lodestar amount of $1,376,423 times a 2.177 multiplier for a total of $2,996,473.[2] Counsel also request $131,900 for expenses.

This case began as a number of separate cases brought by various plaintiffs. Subsequently, the individual cases were either dismissed or consolidated and one class action was brought with most of the plaintiffs in the separate cases being named plaintiffs in the one remaining case. A shareholders' derivative action was also consolidated with the class action. The lawsuit sought damages for alleged securities fraud and also sought to reform manufacturing practices of the corporation. The fraud and other misconduct centered around violations of the United States Food and Drug Act and regulations thereunder. Prior to these suits, Lyphomed had been the subject of investigations by the FDA and some of the alleged fraud related to public statements regarding these investigations. Prior to the settlement of this suit, the FDA had already ordered, and Lyphomed had consented to, certain reforms. Although, class counsel represents certain reforms at Lyphomed as a success of this suit, the settlement provides for, at most, modest reforms in addition to what the FDA had already obtained. The suit was successful in obtaining about $10,000,000 for the class and the court found this to be a fair settlement. Class counsel state that this is probably about half of what actual damages to the class were. While the settlement is fair, it is not an "extraordinary damage recovery" as counsel claims. Also, when originally proposed, the settlement was arranged in a manner that may have required members of the class who still owned Lyphomed stock to pay a portion of the settlement in that Lyphomed itself, which they owned a portion of, would pay the settlement. Thus, the settlement would have been worth less than the $9,900,000. Counsel for plaintiffs failed to point out this significant factor when presenting the proposed settlement to the court. The issue, however, later became moot because all the stock of Lyphomed was bought by another corpora-

1. Most of the figures given in this opinion have been rounded. Due to rounding during some computations, some of the numbers in this opinion do not total precisely.

2. The lodestar amount for one attorney is incorrectly listed as $4,650 instead of $6,450. Also the law firm lodestars were not correctly added together in computing the total lodestar. Assuming $6,450 is the correct amount for the one attorney and assuming that the law firm lodestars in the "summary of attorneys' fees request" are otherwise correct, the correct total lodestar is $1,489,526. With that lodestar, a multiplier of 2.012 would result in a fee request approximately equal to 30% of the settlement fund. If the 2.177 multiplier is still used, the fee request would be $3,242,698 which is 32.8% of the settlement fund. In ¶ 31 of the notice to the class of the proposed settlement, counsel for plaintiffs stated that their fee application would not exceed 30% of the base settlement amount, plus expenses. At the time, expenses were estimated to be $150,500.

tion, so that, at the time the settlement was approved, no class member still owned any Lyphomed stock. It should also be noted that this case did not involve protracted litigation. The case was filed in January 1988. Substantial settlement negotiations began in November 1988. A memorandum of understanding was reached in April 1989 and a stipulation of settlement was entered into in June 1989. The court does recognize, however, that, prior to settlement, defendants were not cooperative in providing discovery.

When the various suits were initially consolidated into one class action, this court warned counsel that fees would not be awarded for duplicative work resulting from the large number of attorneys involved in the case. Nevertheless, a fee petition has been presented which contains attorney's fees of $1,432,115 based on 6,678 hours of work by 61 different attorneys at 10 firms in Chicago, New York City, and Philadelphia.[3] Work was done by 31 partners, 28 associates,[4] and 2 student associates.[5] Counsel argue that not as many attorneys worked on the case as it may appear, since a number of the attorneys billed an insignificant amount of time. Eighteen attorneys billed less than 10 hours, 19 billed 10 to 49 hours, 9 billed 50 to 99 hours, and 15 billed 100 hours or more. This is still a large number of attorneys billing a substantial amount of time and it appears that such circumstances resulted in otherwise unnecessary duplication of effort. *Cf. Procter & Gamble Co. v. Weyerhaeuser Co.*, 711 F.Supp. 904, 905 (N.D.Ill.1989). This is borne out by the specific billings discussed below.

The rates billed are excessive. In the 4 Chicago firms, partners billed an hourly rate of $195 to $300, associates $105 to $175, and paralegals $60 to $65. In the 4

New York firms, partners billed an hourly rate of $275 to $375, associates $120[6] to $240, and paralegals $70 to $100. In the 2 Philadelphia firms, partners billed an hourly rate of $260 to $325, associates $130 to $285, and paralegals $60 to $70.

Considering that a bulk of the work claimed by the attorneys consisted of discovery (primarily of documents), the bulk of the work should have been performed by those charging lower rates, i.e., the associates and paralegals. Nevertheless, 3 more partners than associates participated in this case. More to the point, partners billed 3076 hours, whereas associates only billed about 13% more (3472 hours[7]), and paralegals only billed for 808 hours. Partners billed $760,954 for an average hourly rate of $247. Associates billed $658,536 for an average hourly rate of $190. Categorized by rate, 31% of the hours were billed at $120 to $175, 34% at $180 to $225, 10% at $230 to $270, 17% at $275 to $320, and 8% at $325 to $375.

Counsel's initial fee petition generally did not specify time devoted to specific activities. The only summaries were summaries of the time and lodestar for each attorney and law firm. This petition did not provide a sufficient basis for analyzing the request. *See FMC Corp. v. Varonos*, 892 F.2d 1308, 1316–17 (7th Cir.1990). The court ordered counsel to provide a breakdown of charges for the class certification motion, fairness hearing brief, and court appearances. Counsel submitted these items, but provided a separate submission from each law firm and some of the law firms divided it up by attorney. Nowhere were the amounts totalled. Nowhere is there one chronological submission so that it can be readily determined which activities were being performed at the same time by dif-

---

**3.** This includes the work of 2 student associates. It does not include 808 hours of work by over 20 paralegals for which $57,413 is billed. It also does not include aspects of attorney's fees designated by counsel as expenses.

**4.** Three attorneys who appear to be solo practitioners doing work for two of the law firms involved in the case have been included in the associate category.

**5.** It is assumed that persons designated as "law clerk" and "s. associate" were law students.

**6.** This does not include the student associates who billed at an hourly rate of $95 to $100.

**7.** If the 130 hours billed by student associates is included, the associates billed 17% more hours than the partners.

ferent attorneys. Not even the charges for appearances are organized by appearance date. No subtotals are provided as to certain types of activity, e.g., time spent on discovery related to the class certification motion. The court, however, has done some of this analysis, including reviewing the court file, the docket entries, and the time spent in court, and finds sufficient indication that the fee request is overstated. It is noted that counsel often listed multiple activities for a single time entry, which this court has sought to break down by activity. The presentation has imposed additional burdens on the court.

█ Plaintiffs moved for class certification. The opening brief and reply brief totalled less than 30 pages. Sixteen attorneys billed $58,591 for 281 hours of work on that brief.[8] This amount includes $14,538 for 95 hours of conferring or otherwise communicating with cocounsel. Thus, over one-third of the time billed for the brief was for conferring with other attorneys. The court did not attempt to total up the amount billed for reviewing the work of other attorneys, but that is also a substantial portion of the hours billed. This shows that much of counsel's bill consists of unnecessary duplication of work brought about by having an excessive number of attorneys involved in the case. Although fervently opposed by defendants, class certification was not a difficult issue. It would be extremely unlikely that a stockholder action would not be certified. $30,000 is a more than adequate amount for the class certification briefs. That is about half of the amount claimed.

Plaintiffs submitted a 36–page memorandum in support of final settlement approval. While there is some legal analysis contained in the memorandum, it mostly consists of a factual presentation. Twelve attorneys billed $40,441 for 178 hours of

work on that memorandum. This amount includes $12,997 for 57 hours of conferring with or otherwise communicating with cocounsel. Again, about one-third of the time is devoted to conferring with cocounsel. Substantial charges were also for reviewing the work of other attorneys. $20,000 is more than adequate compensation for the memorandum. Again, that is half of what counsel claims.

█ Counsel billed $24,406 for 99 hours of appearing in court for 26 status and motion calls. This amount includes preparation time as well. Counsel billed for the appearance of more than 2 attorneys on only one occasion and that status hearing concerned the question of consolidating the then-separate cases. New York counsel billed for four court appearances. Each time, New York counsel billed at least 9 hours for a single appearance. No reason is given why a New York partner had to attend a status conference on December 30, 1988 for which he billed $3,981 for 12.25 hours, plus unspecified travel expenses. A Chicago partner also billed $420 for 1.4 hours for attending that status conference. The charge of the New York partner should not be compensated. Also, attorneys billed for court appearances May 17, 1988, May 18, 1988, May 25, 1988,[9] December 31, 1988, and July 20, 1989. The docket entries, however, show no court activity on those days. That time will not be compensated. Otherwise, the hours billed, but not necessarily the rates, appear reasonable. The rate for a New York associate who charged at the rate of $240 per hour, will only be compensated at $190 per hour. The rate for a Chicago partner is reduced from $275 per hour to $200. The rate for another Chicago partner is reduced from $220 per hour to $200.[10] These adjustments result in a recomputed amount of

---

**8.** Counsel also seek $20,480 for 60 hours of discovery related to the motion for class certification.

**9.** The time claimed by a New York lawyer for May 25 travel to Chicago for a May 26 appearance is not being excluded, only the time claimed by a Chicago lawyer for a May 25 appearance.

**10.** Two other Chicago partners charged $200 per hour and one each charged $195, $210, and $300 per hour. Some of the affidavits submitted by counsel also indicate $200 is a sufficient rate.

298

$14,897 which is 61% of what was originally claimed.

■ The above analysis shows that the lodestar is substantially overstated. Excessive hours were charged for work done; there was a substantial amount of duplicative work, apparently caused by overstaffing of the case; the rates charged were excessive; and a disproportionate amount of work was assigned to partners, as well as to associates with higher billing rates.

Since only part of the data could be analyzed, it is difficult to determine how much the total lodestar should be. The specific items analyzed resulted in reductions of 49%, 51%, and 39%. The balance of the time spent was devoted to document discovery, nine depositions which occupied 12 days, and documentation of the settlement. Of the $123,438 claimed for the items analyzed, $64,897 was found to be reasonable which is 52.6% of the amount claimed. Applying this percentage to the total lodestar of $1,489,526 produces a result of $783,491. *See Procter & Gamble*, 711 F.Supp. at 906.

Another approach is to make adjustments to the proportion of partner hours to associate hours and adjust the rates charged to an amount between reasonable New York and Chicago rates. Starting with the assumption—questionable, though, it may be—that 3,500 associate hours is a reasonable amount, partner hours of 1,050 (30%) is a reasonable proportion. 1750 paralegal hours (half the associate hours) may be a reasonable proportion. Rates of $225 for partners, $175 for associates, and $60 for paralegals are more than adequate amounts. These rates and hours produce a total of $953,750: $236,250 for partners, $612,500 for associates, and $105,000 for paralegals.[11] These, assump-

tions, however, overstate the reasonable hours for this case.[12] *Compare Purdy*, 727 F.Supp. at 1269–70.

Based on all the above data, a reasonable lodestar for this case is no more than $950,-000.

■ Counsel argue they are entitled to a multiplier of more than 2. Their principal argument for a multiplier is that a multiplier of that amount "is necessary to attract competent counsel to contingent, complex litigation in the Northern District of Illinois." Such an argument is ludicrous as applied to this case. The problem in this case was not a paucity of attorneys, but an overabundance. This is not a case where a multiplier was needed to attract competent attorneys. Counsel also refer to the quality of the work, the quality of the result, and the complexity of the case. The result of the litigation does not justify a higher award. The quality of work is more than adequately taken into consideration by the high rates allowed. Although the case was not extremely complex, the element of complexity is adequately compensated by the fact that increased complexity results in increased hours which produce a higher lodestar. No multiplier will be allowed.

As counsel concedes, this is not a case governed by a contingent fee contract, but is a common fund case. Counsel argues, though, that a percentage of the fund method is preferable to the lodestar/multiplier method. The court recognizes that there is a trend back to applying a percentage method to attorney's fees awards in common fund cases. *See Mashburn v. National Healthcare, Inc.*, 684 F.Supp. 679, 687–92 (M.D.Ala.1988); *In re Activision Securities Litigation*, 723 F.Supp. 1373 (N.D.Cal.1989).[13] Counsel state, however,

---

**11.** If the average rates of the lodestars in the fee petition are used (partners–247; associates–190; paralegals–71), the result would be $1,048,600.

**12.** The 6300 hours that this computation is based on is only 16% less than the total attorney and paralegal hours claimed by counsel in their petition. If the same ratios between partners, associates, and paralegals are used, the lodestar would be $850,049 if the hours claimed were reduced by 25% to 5615. The lodestar would be

$793,278 if the hours claimed were reduced 30% to 5240.

**13.** Counsel also cite *Hagge v. Bauer*, 827 F.2d 101, 111–12 (7th Cir.1987), and *Lenard v. Argento*, 808 F.2d 1242, 1247–48 (7th Cir.1987). Those cases, however, involved individual plaintiffs who had signed contingency fee contracts and the question of whether the contingency fee contracts could be taken into consideration in determining a fee award under 42 U.S.C. § 1988.

that a blended method may be best. In any event, while the percentage method has been used and approved, counsel point to no controlling precedent that the percentage method must be used.

█ There are two principal arguments for applying the percentage method. One is that it is simpler and less time-consuming than the lodestar approach and therefore saves the court work and time.[14] *See Activision,* 723 F.Supp. at 1375. This court, however, has applied the lodestar in numerous cases and has not been overburdened by the task. Moreover, the attorney's fee issue can involve substantial sums of money and there is no reason why the $3,000,000 claim for attorney's fees in this case is any less deserving of the court's time and attention than a $3,000,000 claim for damages. Also, even if it is true that the fee award often ends up being between 20% and 30% when the lodestar is applied (a proposition that is not true of the present case), that difference can still be substantial. In this case, the difference between 20% and 30% would be $990,000, not a paltry sum. As shown by the present case, the lodestar can still produce a significant variance from the percentage method.

The second argument is that using the lodestar is an incentive to the attorneys to run up the hours while applying the percentage method is an incentive to achieve the greatest award in the least amount of time. *See Activision,* 723 F.Supp. at 1376. However, by awarding attorneys the same percentage regardless of the time devoted to the case, there is no savings in attorney's fees for the class. Thus, in the present case for example, the attorneys

argued that one reason settlement was appropriate was that the greater amount of damages that might be won at trial could be eaten up by further attorney's fees. But if the attorneys would still get 30%, not a lodestar, the greater damages potentially won at trial would not have been achieved at an expense that made additional damages worthless. The class would still receive 70% of the additional damages. A percentage award provides incentive to the attorneys to settle relatively cheaply early in the litigation since it can provide them with a larger hourly fee [15] and then free them up to pursue more cases that they can also settle early in the litigation for less than the best value for the class. Under the lodestar method, requiring fees to be reasonable and awarding multipliers in some cases is the incentive for attorneys to be efficient.

The lodestar and percentage methods each have advantages and disadvantages. There is no clear advantage to using the percentage method. This court will continue to use the lodestar/multiplier method until controlling precedent directs otherwise. *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989); *Purdy,* 727 F.Supp. at 1269.

If the percentage method were used, it would probably result in a higher award than the lodestar method, but still less than the 30% requested by counsel. Awards under the percentage approach are generally in the 20% to 30% range. *Mashburn,* 684 F.Supp. at 692. As already indicated by the reasons for denying a multiplier, this case does not involve any circumstances justifying an award on the high end of

---

**14.** Alternatively, it saves the class additional fees and the cost of appointing a special master to resolve the fee issue. *See Activision,* 723 F.Supp. at 1375. To the extent that is any problem—after all, the master may save the class more in attorney's fees than the master costs for his or her fees—the additional fees can always be charged to the attorneys. This is appropriate in the present type of case where the client (not the defendant) pays the fee, since these fees are an expense of collecting the fee and attorneys generally do not charge the clients for time devoted to a fee dispute with the clients. *Mills v. Eltra Corp.,* 663 F.2d 760, 761 (7th Cir.1981); *Purdy,* 727 F.Supp. at 1270. Also, the better-or-

ganized the attorneys' time records, the less the master would cost them.

**15.** For example, settling a case for $1,000,000 after devoting 1,000 hours work and receiving $300,000 may be more enticing to the attorney than devoting 3,000 hours work and receiving 30% of $2,000,000, even though the latter is better for the class—leaving out possible time value of money factors—and results in $667,000 of fees for a still reasonable $222 per hour instead of the $300 per hour for the settlement scenario.

the range. Instead, the award should be on the low end of the range. An award below 20% may even be justified under the percentage approach, but that question will not be resolved since the award in this case will be based on the lodestar approach.

An attorney's fee award of $950,000 adequately compensates the attorneys for the work they performed. This was not a particularly risky case to assume and that amount provides a substantial rate for the reasonable hours put into this case. In addition to the $950,000, counsel should receive the interest earned on that portion of the settlement fund subsequent to the December 22, 1989 entry of judgment in this case.

■ Still remaining is the question of expenses. Counsel request $131,900 for expenses. Again, no categorized totals were provided by counsel. The court has totaled the expenses and the major items include $43,037 for an assessment fund used for printing and mailing; $18,917 for travel and transportation; $17,867 for photocopying; $15,752 for experts; $10,623 for computer research; $8,051 for telephone and fax expenses; and $6,559 for mail and delivery expenses. The expenses may include unnecessary travel, telephone, mail, and photocopying expenses resulting from the unnecessary number of attorneys involved in this case. The expense total, however, does not appear unreasonable. The expenses will be allowed except for computer research, which is part of the amount allowed for attorney's fees. An award of $121,277 will be allowed.

IT IS THEREFORE ORDERED that the joint petition of class and derivative counsel for an award of attorney's fees and reimbursement of expenses is granted in part and denied in part. The Clerk of the Court is directed to enter judgment awarding plaintiffs' counsel $1,071,277 representing $950,000 attorney's fees and $121,277 expenses payable out of the class settlement fund, plus interest accrued from December 22, 1989 to the date of disbursement from the settlement fund escrow account.

## ON MOTION FOR RECONSIDERATION

Counsel for plaintiffs have timely moved for reconsideration of this court's February 27, 1990 ruling on their fee petition.[1]

The February 27 opinion states the grounds for denying any multiplier. Counsel present nothing to change the conclusion that this case did not involve the risk or quality of result[2] that would justify a multiplier. It is not established that none of the 10 law firms, nor any other law firm, would have taken on this case if it could not be presumed that a multiplier would be awarded if the suit was successful. Also, despite the implications of counsel's arguments, this court only ruled that a multiplier is inappropriate for this case; there is nothing in the prior opinion to indicate that a multiplier is never appropriate in securities litigation. As indicated in the February 27 opinion, the high rates and substantial hours allowed in computing the lodestar provide adequate compensation without a multiplier.

Counsel react to comments about their deficient presentation in the fee petition by complaining that the court was not clear enough in its request for information. Counsel, however, know that raw data can-

1. Although dated February 27, 1990, the judgment was entered on March 1, 1990. Also, although presented on March 16, 1990, the motion was filed on March 13, 1990. *See* Local Rule 12(d).

2. Counsel complain about the court's reference to Lyphomed paying part of the settlement. Counsel's response misses the point. First, the nature of the settlement was the principal factor considered as regards the quality of the result. While the facts about Lyphomed paying part of the settlement were considered, that was not a dispositive factor. Second, contrary to counsel's argument, this court never ruled that a settlement requiring Lyphomed to be responsible for damages would not be approved. Instead, the court requested information regarding insurance coverage and how much Lyphomed stock was still owned by class members. This information was necessary to determine the true value of the settlement and the settlement's fairness as to all class members. This was a substantial issue that counsel failed to address in their briefs in support of settlement until the court required counsel to address it.

not be analyzed until it is organized in a manner that lends itself to analysis. When certain breakdowns were requested and provided, it should have been obvious to counsel that those breakdowns also had to be totaled for the entire litigation, not just presented attorney by attorney or firm by firm. As stated in the February 27 opinion, the court had to do certain compiling of data that should have been provided by counsel.[3]

Counsel complain that the rates used were too low and that it is inappropriate to use one rate for attorneys from different cities. First, it should be noted that the rates used were not significantly lower than those requested by counsel. As stated in the February 27 opinion, the averages of the hourly rates requested were $247 for partners, $190 for associates, and $71 for paralegals. The rates used by this court, $225, $175, and $60, only represent a reduction of 8.9%, 7.9%, and 15.5% respectively. As indicated in footnote 11 of the February 27 opinion, even if the average rates requested by the attorneys had been used, they would only have produced a result of $1,048,600 instead of $953,750. The latter figure is $94,850, or 9.0%, less.

There are certainly reasons why a reduction in the rates charged would be appropriate. There is nothing in the credentials nor work of certain Chicago partners to justify that they be reimbursed at the rate of $275 per hour while other equally capable Chicago partners in this case charged only $195 to $210 per hour. There is also no justification for a Philadelphia associate charging a rate of $285 per hour or Philadelphia paralegals charging $85 to $100 per hour. Sixty to sixty-five dollars per hour for Chicago paralegals and $85 per hour for New York paralegals is also high. Nevertheless, since the average of the

rates proposed is within 10% of what the court finds to be reasonable, no adjustment to the claimed rates will be made. A lodestar of $1,050,000 will be allowed.

Citing *In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 590–91 (3d Cir.1984), counsel also argue it is improper to use one national rate. That, however, is not what is being done. Using an overall average takes into account the firms involved in the case, the allocation of claimed hours, and the attorneys involved.[4] The average rate employed produces the same result as determining the total amount of appropriate hours and then allocating those hours to individual attorneys and applying their individual rates.

Counsel complain that, as regards the hours for the class certification brief, fairness memorandum, and court appearances, the court did not determine a reasonable amount of hours. It must be recognized that examination of those hours was only used as a guide in determining an appropriate amount of hours. Although a reasonable amount was found to be 52.6% of the amount claimed for those items, the $1,050,000 awarded is 70.6% of the $1,487,725 that counsel now claim is the correct lodestar. While counsel now present some additional information in support of additional hours for court appearances, adding in those hours would not change the conclusion that $1,050,000 is a reasonable lodestar.

Counsel cite *In re Fine Paper,* 751 F.2d at 594–95, for the proposition that it is improper to make across the board percentage cuts. However, while the court made that type of calculation, i.e., the 52.6% calculation referred to above, as already stated, that was only used as a guide in making the ultimate calculation. Therefore, it

**3.** It is also noted that counsel complain that they were not given the opportunity to present additional requested data, something the court found unnecessary because the court did its own data compilation and organization. Nevertheless, other than an inconsequential transposition of numbers regarding a student associate's hours, counsel do not point to any specific disagreement with the court's calculations of the hours or amounts claimed.

**4.** It is noted that approximately 68% of the partner hours claimed are for Chicago partners. As regards associate hours, 26% were for Chicago associates and 33% were for Philadelphia or New York associates who charged $160 or less. Since a higher percentage of the work was done by Chicago or other less expensive attorneys, the average rate is closer to Chicago rates, than New York rates.

is unnecessary to determine if that aspect of *In re Fine Paper* is the controlling law in this circuit. On the other hand, that case provides support for this court's methodology of determining an appropriate allocation between partner and associate hours, *see id.* at 591–93, and this court's conclusion that hours should be reduced for duplication of effort caused by excessive conferring and reviewing time and the excessive number of attorneys involved in the case. *See id.* at 594.

Last, counsel argue that computer research fees are appropriate costs to reimburse. The court does not disagree that computer research fees are an appropriate part of attorney's fees. The court, however, did not allow them as a separate cost because they should be considered part of the $1,050,000 fee award already allowed, not part of the separately awarded costs.

IT IS THEREFORE ORDERED that "class plaintiffs'" motion for reconsideration is granted in part and denied in part. The judgment entered on March 1, 1990 is vacated. The Clerk of the Court is directed to enter judgment awarding plaintiffs' counsel $1,171,277 representing $1,050,000 attorney's fees and $121,277 expenses payable out of the class settlement fund, plus interest accrued from December 22, 1989 to the date of disbursement from the settlement fund escrow account.